Hillsborough
No. 83-442

APPLIED CHEMICAL TECHNOLOGY, INC.

v.

TOWN OF MERRIMACK
AND
ANHEUSER–BUSCH, INC., INTERVENOR

February 7, 1985

*Winer, Pillsbury and Bennett,* of Nashua (*J. Bradford Westgate* on the brief and orally), for the plaintiff.

*Bossie, Kelly & Hodes,* of Manchester (*Robert F. Bossie* on the brief, and *Stephen Buckley* orally), for the defendant.

*Sheehan, Phinney, Bass and Green P.A.,* of Manchester (*William S. Green* on the brief and orally), for the intervenor.

*New England Legal Foundation,* of Boston, Massachusetts (*Wayne S. Henderson* on the brief and orally), for the Business and Industry Association of New Hampshire, as amicus curiae.

BATCHELDER, J.  On September 28, 1983, the Superior Court (*Goode,* J.) approved the recommendation of a Master (*Mayland H. Morse, Jr.,* Esq.) and held that the defendant, the Town of Merrimack (Merrimack), improperly denied the plaintiff, Applied Chemical Technology, Inc. (ACT), approval of a site plan for the construction of a hazardous waste treatment facility. Anheuser-Busch, Inc. (AB), which was an intervenor in the superior court proceeding, and Merrimack appeal this decision. We affirm.

ACT is in the business of constructing and operating facilities for the treatment and disposal of hazardous wastes. ACT obtained an

option to purchase a parcel of land in Merrimack on which it intends to develop a hazardous waste treatment facility. The proposed site is near a brewery that AB owns and operates. AB objects to the proposed site on the ground that sales of its products could be harmed if consumers learn of the proximity of the treatment facility. Heavily dependent on the brewery for its economic well-being, Merrimack shares these concerns.

In 1980, ACT applied to the New Hampshire Bureau of Waste Management under RSA chapter 147-A for a permit to construct the treatment facility. On August 24, 1981, ACT applied to the Merrimack Planning Board for site plan approval under RSA 36:19-a and the Merrimack site plan regulations. On December 15, 1981, the site plan application was denied.

The superior court held that the denial of the site plan application was improper because the State hazardous waste statute, RSA chapter 147-A, 147-B, 147-C, and 147-D (Supp. 1983), preempted the local authority to deny the permit. The court based its decision on *Stablex Corp. v. Town of Hooksett*, 122 N.H. 1091, 456 A.2d 94 (1982).

In *Stablex* we held that, in light of their comprehensive nature, RSA chapters 147-A, 147-B, 147-C, and 147-D preempt "any local actions having the intent or the effect of *frustrating*" the State regulation of hazardous waste. *Id.* at 1102, 456 A.2d at 100. Excluded from preemption are "[a]ny local regulations relating to such matters as traffic and roads, landscaping and building specifications, snow, garbage, and sewage removal, signs, and other related subjects, to which any industrial facility would be subjected and which are administered in good faith *and without exclusionary effect. . . .*" *Stablex, supra* at 1104, 456 A.2d at 101 (emphasis added). Since the denial of the site plan approval has a direct "exclusionary effect" on the siting of the ACT facility and thereby has a "frustrating" effect on the State regulation of this matter, Merrimack's authority to deny the approval is within the field of preempted regulation enunciated in *Stablex*. Nonexclusionary aspects of the town's site plan review process, however, remain unaffected.

In this appeal, Merrimack and AB argue that *Stablex* articulated an overly broad standard of preemption that requires qualification. They argue that the regulatory process of waste treatment facility siting fails to consider the local economic effects of a proposed siting, that the economic interests of landowners have been accorded solicitous protection in other legislation and in the public policy of this State, and therefore that *Stablex* should be construed to allow for local protection of these interests. They urge us to hold that the

State hazardous waste statute, RSA chapters 147-A to 147-D, does not preempt local regulation insofar as the local regulation compensates for this failure of the State regulatory scheme to consider the local economic effects of a proposed siting.

We reject this argument because we find that it rests on a false premise—that the regulatory process of waste treatment facility siting fails to address the local economic effects of a proposed siting.

The statute and the regulations thereunder establish a detailed, comprehensive scheme of hazardous waste regulation. Two administrative mechanisms in this scheme allow local landowners and others to act to protect their economic interests.

First, a town in which a facility is proposed to be built may appoint a hazardous waste facility review committee. RSA 147-C:2 (Supp. 1983) requires committee appointment when a completed application for a new hazardous waste *disposal* facility is received by the office of waste management. Tracking the statute, but broadening its import to cover nondisposal as well as disposal facilities, the regulations authorize committee appointment when a completed application for any new hazardous waste management facility is received. N.H. ADMIN. CODE He-P 1905.09(f)(6)e.1.

Under both the statute and the regulations, the committee has a right to all information received by the office of waste management relevant to the permit application, RSA 147-C:4, I(b) (Supp. 1983) (committee has access to all information except trade secrets); N.H. ADMIN. CODE He-P 1905.09(f)(6)e.2.; it is to represent the town in public hearings on the permit application, RSA 147-C:4, I(a)(Supp. 1983); N.H. ADMIN. CODE He-P 1905.09(f)(6)e.2.; and it is to submit recommendations on the permit application to the office of waste management, RSA 147-C:4, I(d) (Supp. 1983); N.H. ADMIN. CODE He-P 1905.09(f)(6)e.2.

The statute provides that in preparing its recommendations the committee shall "comprehensively study the immediate and long-term effects of [the] proposed . . . facilit[y] on . . . (3) [t]he economy of the area in which the disposal facility would be located . . . ." RSA 147-C:4, I(c) (Supp. 1983). The statute thus recognizes that the effects on the local economy are a valid concern of the local community and requires an evaluation of these effects before a disposal siting decision is made. Providing only that the committee is to represent the interests of the municipality, the regulations fail to specify issues to be addressed by the committee in preparing its recommendations. *See* N.H. ADMIN. CODE He-P 1905.09(f)(6)e.1. In light of the statute, however, we find that the committee may properly consider the economic impact of a proposed siting. The regulations, as well as the statute, thus allow the facility review committee

to evaluate the local economic effects of a proposed facility and to inform the office of waste management of local concerns about these effects.

Second, parties opposed to a proposed siting may require the office of waste management to hold public hearings on the merits of a draft siting permit by submitting to the office administrator a written notice of permit opposition. N.H. ADMIN. CODE He-P 1905.09(f)(6)d.3. Because the committee may consider local economic effects of a proposed siting in making its recommendations and is to participate in public hearings on the permit application, RSA 147-C:4, I(a) (Supp. 1983); N.H. ADMIN. CODE He-P 1905.09(f)(6)e.2., these effects are an appropriate subject for public hearings before the office of waste management. Parties to the hearings may submit requests for specific findings of fact and rulings of law, which must be honored. *See Appeal of the Town of Plymouth*, 125 N.H. 141, 147, 479 A.2d 1388, 1391 (1984); *LUCC v. Pub. Serv. Co. of N.H.*, 119 N.H. 332, 341, 402 A.2d 626, 632 (1979). Parties opposed to a proposed siting may thus require the office of waste management to hold public hearings, to make written findings of the economic effects of a proposed siting, and to establish thereby a written record for administrative or judicial review.

■■ We find that, in light of the claims of Merrimack and AB, these two aspects of the State regulatory scheme of hazardous waste facility siting warrant affirmation of the broad rule of preemption announced in *Stablex Corp. v. Town of Hooksett*, 122 N.H. 1091, 1102, 456 A.2d 94, 100 (1982), and thus of the trial court's decision in this case. The master's finding that ACT has completed the site plan review process to the extent required under *Stablex* is therefore affirmed.

*Affirmed.*

All concurred.