NITE MOVES ENTERTAINMENT, INC., an Idaho corporation, Erotic City, a sole proprietorship, and Spontaneous Productions, Inc, an Idaho corporation, Plaintiffs,

v.

CITY OF BOISE, an Idaho municipal corporation, Defendant.

No. CV–00–449–S–BLW.

United States District Court, D. Idaho.

Jan. 17, 2001.

Debora K. Kristensen, Givens Pursley, Boise, ID, for plaintiffs.

Robert B. White, Givens Pursley & Huntley, Boise, ID, for Jamie Collins.

Susan L. Mimura, Kevin S. Borger, Boise City Prosecuting Attorney's Office, Boise, ID, for defendant.

## MEMORANDUM DECISION AND ORDER

WINMILL, Chief Judge.

### Introduction

The Court finds that Boise's nudity ordinance violates the First Amendment. By banning anything more revealing than short shorts and modest halter tops, the ordinance sweeps too broadly in curtailing expressive nude dancing, protected by the First Amendment under Supreme Court case law. The Court therefore finds the ordinance void and unenforceable. The Court's analysis is set forth below.

### Analysis

This action was initiated by the plaintiffs' filing of a complaint seeking declaratory judgment and injunctive relief. Plaintiffs claim (1) that Boise City Ordinance 6008 as amended by the Boise City Council on August 22, 2000, unconstitutionally infringes upon plaintiffs' right to freedom of expression guaranteed by the First Amendment to the United States Constitution, and (2) that the Boise City Council did not satisfy the requirements of Idaho Code § 50–902 in amending the ordinance, in violation of plaintiffs' procedural due process rights. Other issues presented by both parties relevant to the determination

of these matters, including defendant's Motion in Limine to Exclude Expert Testimony (Docket No. 37), are also discussed herein. A trial in this matter was held on October 3, 2000, after which the matter was taken under advisement. The Court concludes that Boise City Ordinance 6008 unconstitutionally infringes upon the plaintiffs' First Amendment rights to freedom of expression. Accordingly, the relief requested by the plaintiffs will be granted.

## I. Factual Background

While the precise date is unclear, the concept of a "nudity ordinance" in Boise arose from "an event held in downtown Boise that became nude dancing" and "concerns and complaints about partial nudity appearing in other places, specifically in the parks." *Testimony of Kevin Borger, Transcript of Boise City Pre–Council Meeting,* August 8, 2000, pg. 1. Around the time the City first began formulating a nudity ordinance, the City Attorney's office became aware that an ordinance restricting nudity was being challenged and was currently pending before the United States Supreme Court. It appears that work on the Boise ordinance was put on hold until March, 2000 when the decision in *City of Erie v. Pap's A.M.,* 529 U.S. 277, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000), came down. *Id.* at 1. In light of the Supreme Court's decision upholding the ordinance in *City of Erie,* Boise began to prepare an ordinance of its own. In an effort to ensure the Boise ordinance would pass constitutional muster, Mr. Borger attended a seminar in Washington, D.C. and gathered information and studies on the secondary effects of nudity and erotic

dancing. *Id.* at 2. These efforts ultimately crystalized into a draft version of a Boise City ordinance prohibiting public nudity.

On August 15, 2000, the Boise City Council met for its regularly scheduled meeting. On the agenda for the meeting was the third and final reading and public hearing on the proposed ordinance 0–44–00, creating a new Title 6, Chapter 22 of the Boise City Code, the title of which indicated that its intent was to outlaw public nudity. After hearing testimony from 77 members of the public, some of whom favored and some of whom opposed the ordinance, the Boise City Council approved the proposed ordinance ("the original ordinance") in the early morning hours of August 16, 2000 by a vote of 4–1.

On August 17, 2000, plaintiffs filed a Complaint for Declaratory Judgment and Injunctive Relief against defendant, seeking among other things a declaratory judgment that the original ordinance was unconstitutional under the First Amendment to the United States Constitution and under Article I, Section 9 of the Idaho Constitution. On the same day, plaintiffs filed a Motion for Emergency Temporary Restraining Order seeking an order preventing defendant from enforcing the Original ordinance.

On August 18, 2000, after hearing argument from counsel for plaintiffs and defendant, this Court issued a Temporary Restraining Order prohibiting enforcement of the original ordinance. In so doing, this court noted concerns with subsection (b) of Section 6–22–02.[1]

---

1. Section 6–22–02(b) made it illegal for a person to "manage, produce, sponsor, present, or exhibit, a person in the state of nudity." In this respect the Original ordinance substantially departed from the language of the ordinance upheld in *City of Erie v. Pap's A.M.,* 120 S.Ct. 1382, 1391 (2000), by imposing not only a ban on public nudity, but also a prohibition on displays, presentations, and exhibitions that included any form of nudity. By subsequently amending the original ordinance to delete this provision, the City appears to have conceded that it presented overbreadth problems not at issue in *City of Erie.*

On August 22, 2000, the Boise City Council met in executive session to consider the status of the ordinance. At the conclusion of the executive session, with five of the six members of the council present, the City Council voted 4–1 to repeal subsection (b) of Section 6–22–02 of the original ordinance, thereby creating a new and amended ordinance (the "amended ordinance"). According to Borger, the repeal of subsection (b) was the result of a motion to reconsider made pursuant to Boise City Code § 1–02–16.

The amended ordinance contained the same ban on public nudity that was contained in the original ordinance. Specifically, both ordinances made it unlawful for any person to appear in any public place in a state of nudity. The amended ordinance defined nudity as follows:

a. "Nudity" means the showing, in a public place, of the human male or female genitals, pubic area, anus or buttocks or cleft of the buttocks with less than a fully opaque covering, the showing of the female breast with less than fully opaque covering of any part of the breast below the top of the areola, or the showing of covered male genitals in a discernibly turgid state.

This ban on public nudity went substantially further than the ordinance that the Supreme Court found acceptable in the *City of Erie* decision. Specifically, the ordinance at issue in *City of Erie* would only require that erotic dancers "wear, at a minimum, 'pasties' and a 'G-string.'" *City of Erie v. Pap's A.M.* 529 U.S. 277, 120

S.Ct. 1382, 1388, 146 L.Ed.2d 265 (2000), while Boise's ordinance would have required the wearing of what may be referred to as "short shorts" and a modest bra or halter top.[2] Indeed, many of the swim suits and gowns sold in Boise department stores could not be worn in public without violating the Boise ordinance's ban on public nudity.

The amended ordinance was published in the *Idaho Statesman* on August 26, 2000, and thereby became effective on that date. Subsequently, plaintiffs filed an amended complaint seeking declaratory judgment and injunctive relief from enforcement of the amended ordinance. On September 5, 2000, upon stipulation of the parties, the Court vacated the Temporary Restraining Order and issued, in its place, a Preliminary Injunction, the duration of which was extended until a full hearing could be held on the matter.

The trial in this matter was held on October 3, 2000. Testimony lasted approximately four hours, during which the Court heard from four witnesses, all testifying on behalf of the plaintiffs. Dr. Daniel Linz, a professor at the University of California–Santa Barbara whose studies involve the application of social science methodology to problems in law and public policy, testified first. The premise of Dr. Linz's testimony was that the land use studies and reports of crime regarding adult businesses upon which the Boise City Council relied are fundamentally flawed and do not comply with the standards for

---

**2.** Boise's ordinance is substantially more restrictive than nudity ordinances upheld in other jurisdictions. *See, e.g., Bright Lights, Inc. v. City of Newport*, 830 F.Supp. 378, 380 (E.D.Ky.1993) (upholding ordinance requiring G-string and a bra not "expos[ing] to view the portion of the breast below a horizontal line across the top of the areola" but excluding "cleavage ... exhibited by a dress, blouse, shirt, leotard, bathing suit, or other wearing apparel provided the areola is not exposed in whole or in part"); *Café 207, Inc. v. St. Johns County*, 856 F.Supp. 641, 643 (M.D.Fla.1994) (upholding ordinance providing "in net effect, a female is 'nude' whenever more than two-thirds of the buttocks or more than three-fourths of the breasts are exposed."). The parties have not cited any case upholding an ordinance as restrictive as the Boise ordinance.

adjudicative expert testimony laid out in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

Jamie Collins, a nude entertainer at Erotic City, testified next. Ms. Collins' testimony addressed the effect partial clothing requirements would have on the erotic message she conveys while dancing. Ms. Collins' testimony was followed by that of Scott Stewart, artistic director for Spontaneous Productions, Incorporated. Mr. Stewart testified regarding the impact the Boise ordinance would have on retaining the rights to perform and properly performing certain productions frequently produced at the theater. The final witness was Colleen Patricia Heaton, a partner of Nite Moves Entertainment. Ms. Heaton testified generally about the adult entertainment industry and the manner in which Nite Moves would carry out its business.

## II. Analysis

### A. The City violated Idaho Code § 50–902 in adopting the amended ordinance and repealing subsection (b).

Plaintiffs contend that in passing the Amended Ordinance at the August 22, 2000 meeting, the Boise City Council violated Idaho Code § 50–902 which provides that "[o]rdinances shall be read on three (3) different days, two (2) reading of which may be by title only and one (1) reading of which shall be in full, unless one half (½) plus one (1) of the members of the full council shall dispense with the rules." Plaintiffs argue that Idaho law requires that in repealing and amending an ordinance, the City Council must follow the same procedure required for enactment of an ordinance. *See Beem v. Davis,* 31 Idaho 730, 175 P. 959 (1918).

The City concedes that it did not comply with Idaho Code § 50–902 in repealing subsection (b) of the original ordinance.

However, the City argues that the city was not adopting a new ordinance, but was simply reconsidering its passage of the original ordinance. As such, the City argues that its procedures were governed by Boise City Code § 1–02–16, which sets forth the reconsideration process. That ordinance reads as follows:

> When a question has been once decided, it shall be in order for any member who voted in the affirmative to move for a reconsideration thereof, but no motion for reconsideration of a vote shall be made after adjournment of the next regularly scheduled meeting following the final reading of any ordinance or resolution to be considered or any vote to be reconsidered. No motion for such reconsideration shall be made more than once.

The record reflects that the Council fully complied with § 1–02–16 in its attempt to repeal subsection (b). It is undisputed that the original ordinance was properly adopted on August 15. At the next regularly scheduled meeting (only a week later), Council member Baker, who voted in favor of the original ordinance, moved for reconsideration. No motion for reconsideration had been made prior to that time. The fact that the council met in executive session, or that an executive session was held to discuss "pending litigation," is not material in this case. Section 1–02–16 does not require additional public notice or comment, and the session was called during the course of a regularly scheduled meeting. For these reasons, the City Council was clearly acting within the parameters of Boise City Code § 1–02–16, and thus properly reconsidering the original ordinance to address this Court's concerns with its constitutionality.

The plaintiffs argue, however, that the Idaho Supreme Court's decision in *Beem v. Davis,* 31 Idaho 730, 175 P. 959 (1918),

requires that a city council, in repealing or amending an ordinance, must follow the same procedure required for its original enactment. In *Beem*, the plaintiff filed a petition for a writ of mandamus to compel the village officers to enforce provisions of an ordinance fixing fire limits. The evidence at trial showed that when a particular building was to be constructed, the village trustees attempted to suspend the ordinance so as to permit the building's construction. The trustees had simply agreed to repeal the ordinance indefinitely, while a more substantial procedure was required to pass the ordinance in the first instance. Under these circumstances, the court ruled that "this proceeding could not operate as a repeal of the ordinance" because "an ordinance can be repealed only by pursuance of the same method necessary for its enactment." *Id.* at 962.

Unfortunately, the Idaho Supreme Court did not explain the basis for its decision. It is unclear whether its conclusion was based upon a general principle of equity, or whether other ordinances or by-laws of the village imposed such a requirement. No case law is cited for the proposition, and plaintiffs have not provided any additional case law supporting this holding. The Court is likewise unaware of any Idaho case that has addressed this issue or stated its support for this proposition.

The Court in *Beem* seems to have adopted what Courts in some jurisdictions have referred to as the doctrine of "legislative equivalency." *Matter of Rockland Properties Corp. v. Town of Brookhaven*, 612 N.Y.S.2d 673, 674, 205 A.D.2d 518, 519 (N.Y.App.Div.1994), *Chicago, I. & L. Ry. Co. v. Town of Salem*, 166 Ind. 71, 76, 76 N.E. 631, 633 (Ind.1906), *Bradley v. City of New Castle*, 730 N.E.2d 771 (Ind.Ct. App.2000). Typically, the doctrine of legislative equivalency requires that an employee position created by a legislative act must be abolished by a correlative legisla-

tive act. *Civil Service Employees Association, Inc. v. County of Nassau*, 696 N.Y.S.2d 174, 264 A.D.2d 798 (N.Y.App. Div.1999). In some instances, however, the doctrine of legislative equivalency requires that the act which amends or repeals a law must be of equal dignity with the act which establishes it; and an ordinance can be amended or repealed only by another ordinance enacted with like formality as the original ordinances. In other words, existing legislation may be amended or repealed only by the same procedures as were used to enact it. *See, Matter of Gallagher v. Regan*, 42 N.Y.2d 230, 234, 397 N.Y.S.2d 714, 366 N.E.2d 804, 808 (N.Y.1977); *see also Rockland Properties*, at 519, 612 N.Y.S.2d 673; *Bradley*, at 787.

The principles underlying the doctrine of legislative equivalency are also embodied within I.C. § 50–901 and 902, which sets forth the procedures that a city must follow in passing, amending, or repealing an ordinance. It seems clear from the language of those statutes, that a city may only amend or repeal an ordinance that has been duly passed, taken effect, and become part of the city code, by adopting yet another ordinance that expressly amends or repeals it. The city council, in adopting such an amendatory ordinance, must clearly follow the procedures that the Idaho legislature has prescribed for the adoption of ordinances. This, the City failed to do.

This would call into question the validity of the City's reconsideration ordinance. However, this issue need not be addressed further here because a determination of the issue would not affect the ban on public nudity with which the plaintiff is concerned. Invalidating the amended ordinance would leave the original ordinance, since it was appropriately adopted. As noted above, the amended ordinance is identical to the original ordinance, except

for the deletion of subsection (b). Because the Court finds herein that subsection (a) is an unconstitutional infringement on the freedom of expression, neither provision can properly be enforced.

B. *It is unnecessary for the Court to reach the further issue of whether the City also violated the plaintiff's Due Process Rights in adopting the amended ordinance.*

Plaintiffs also argue that the City Council, in enacting the amended ordinance, violated their Due Process Rights. However, it is well-settled that a federal court should refrain from deciding a constitutional issue when a non-constitutional ground for decision is available. *Wolston v. Reader's Digest Ass'n, Inc.*, 443 U.S. 157, 161 n. 2, 99 S.Ct. 2701, 61 L.Ed.2d 450 (1979); *Ashwander v. TVA*, 297 U.S. 288, 341, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring); *Gutierrez v. Immigration and Naturalization Service*, 745 F.2d 548 (9th Cir.1984). In other words, when a non-constitutional ground will dispose of an issue, it is the Court's obligation to use it. The Court has already determined that even if the amended ordinance was not properly adopted, the Court would be required to consider an identical provision in the original ordinance. Given this holding, it is unnecessary to address the constitutional due process issue raised by the plaintiffs.

C. *The Ordinance unconstitutionally infringes upon plaintiffs' First Amendment rights.*

Plaintiffs claim that the amended ordinance unconstitutionally infringes upon plaintiffs' freedom of expression guaranteed by the First Amendment to the United States Constitution and by Article I, Section 9 of the Idaho Constitution. The Supreme Court has found that "being 'in a state of nudity' is not an inherently expressive condition." *City of Erie v. Pap's A.M.*, 120 S.Ct. 1382, 1391 (2000). However, the Supreme Court has consistently found that nude dancing of the type at issue here is expressive conduct falling within the outer ambit of the First Amendment's protection. *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 565–66, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991); *Schad v. Mount Ephraim*, 452 U.S. 61, 66, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981).

To ascertain what level of scrutiny applies to the nudity ordinance here, a determination must be made as to whether the regulation "is related to the suppression of expression." *Texas v. Johnson*, 491 U.S. 397, 403, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989); *see also City of Erie*, at 1391. As the Court found in the *Johnson*, if the governmental purpose in enacting the regulation is unrelated to the suppression of expression, then the regulation need only satisfy the "less stringent" standard for evaluating restrictions on symbolic speech established in *United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968) [3]. If, however, the government interest is related to the content of the expression, then the regulation falls outside the scope of the O'Brien test and must be justified under a more demanding standard. *Id.* at 403, 109 S.Ct. 2533.

In *City of Erie*, the Supreme Court concluded that "government restriction on public nudity ... should be evaluated under the framework set forth in O'Brien."

---

**3.** In *O'Brien,* the Supreme Court found that a statute prohibiting knowing destruction of selective service certificates did not abridge free speech on its face. It was determined that "freedom of expression" does not include all modes of communication of ideas by conduct.

Therefore, the Court concluded that punishment for burning a draft card penalized only the non-communicative element of the act even though the act contained communicative elements. *Id.*

120 S.Ct. at 1391. The Boise City ordinance, like the ordinances in *Barnes* and *City of Erie*, is, on its face, a general prohibition on public nudity. By its terms, the ordinance regulates conduct alone. As the Supreme Court found in *Barnes* and *City of Erie*, this sort of ordinance "does not target nudity that contains an erotic message; rather, it bans all public nudity regardless of whether that nudity is accompanied by expressive activity." *Id.* at 1391; *Barnes*, 501 U.S. at 568, 111 S.Ct. 2456. In making such a finding, the Court must look primarily at the face of the ordinance. Despite allegations that the council was targeting what it deemed inappropriate expression, the Court cannot strike down an otherwise constitutional enactment "on the basis of an alleged illicit motive." *City of Erie*, 120 S.Ct. at 1391; *see also United States v. O'Brien*, 391 U.S. 367, 382–83, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). Thus, the O'Brien test is properly applied in the instant action.

■ The *O'Brien* test requires a restriction (1) be within the constitutional power of the government to enact; (2) serve a substantial government interest; (3) not be related to the suppression of free expression; and (4) not be any greater than necessary to serve the substantial government interest. As the test is applied, the Boise ordinance is deemed valid if the ordinance satisfies these four factors for evaluating restrictions on symbolic speech.

The first factor of the *O'Brien* test is whether the government regulation is within the constitutional power of the government to enact. A municipality in Idaho possesses and exercises those powers granted to it either by the state constitution or the legislature. Section 2 of Article 12 of the Idaho Constitution grants municipalities police power to make and enforce regulations. It is generally recognized that the authority granted under Section 2 of Article 12 is restricted in three ways:

(1) the ordinance or regulation must be confined to the limited powers of the governmental body enacting the same, (2) it must not be in conflict with other general laws of the state, and (3) it must not be an unreasonable or arbitrary enactment. *Benewah County Cattlemen's Ass'n, Inc. v. Board of County Com'rs of Benewah County*, 105 Idaho 209, 212, 668 P.2d 85, 88 (1983).

In the ordinance itself, the City Council articulates several purposes underlying its adoption. The preamble states that the "City of Boise is concerned with the health and safety of its citizens" and that the City desires to prevent criminal behavior such as "prostitution, sexual assault, the spread of sexually transmitted diseases and other deleterious effects." They rely upon studies done by other cities on the effects of sexually oriented businesses which find a causal connection between such businesses and criminal behavior such as "sex offenses, property crimes and homicide, rape and robbery." Boise City Code § 6008. Clearly, ordinances promoting public health and safety, such as the one here, are typically within the City's police power to enact. Thus, the ordinance is not arbitrary and, absent direct conflict with a state law, would appear to be within the City's power to enact.

However, plaintiffs claim that Boise was without power to enact the ordinance because the field of obscenity is statutorily preempted by the State of Idaho. The Idaho State Legislature has affirmatively indicated that it reserves, to the exclusion of municipal governments, the right to regulate indecency and obscenity. Idaho Code § 18–4113 provides:

In order to make the application and enforcement of this act uniform throughout the state, it is the intent of the legislature to preempt, to the exclusion of city and county government, the regu-

lation of the sale, loan, distribution, dissemination, presentation, or exhibition of material or live conduct which is obscene. To that end, it is hereby declared that every city or county ordinance adopted before the effective date of this act which deals with the sale, loan, distribution, dissemination, presentation, or exhibition of material of live conduct which is obscene shall stand abrogated and unenforceable on or after such effective date; and that no city or county government shall have the power to adopt any ordinance relating to the regulation of the sale, loan, distribution, dissemination, presentation, or exhibition of material or live conduct which is obscene on or after such effective date.

As plaintiffs note, the Boise nudity ordinance and Idaho Code § 18–4113 have many similar purposes and may at times prohibit identical conduct. "Safety, morality and community protection are dominant themes in [the Senate Statement of Purpose of Idaho Code § 18–4113] as well as the preamble to the Ordinance." *Plaintiffs' Trial Brief*, pg. 25. From this alone, however, one cannot reach the conclusion—urged by the plaintiffs—that the state has preempted the field.

Preemption can either be express or implied. *State v. Musser,* 67 Idaho 214, 176 P.2d 199 (1946); *Caesar v. State,* 101 Idaho 158, 610 P.2d 517 (1980). Plaintiffs have challenged the ordinance on both grounds. Idaho case law discussing express preemption is sparse, and appears to be non-existent with respect to Idaho Code § 18–4113. Typically, state preemption analysis involves a two-step test: it must first be determined whether the local ordinance, in fact, conflicts with state law and, if so, it must then be determined whether the legislature intended to permit the conflict. State law will displace a local ordinance when a local ordinance is facially incompatible with or directly contradicts state law in area of substantive policy. *Id.*

at 519. However, a local ordinance that does not, on its face, conflict with state law is not preempted if the local ordinance and state law are wholly unrelated. *Musser,* 67 Idaho at 220, 176 P.2d 199.

Idaho Code § 18–4113 clearly and unequivocally states that the State of Idaho will have the exclusive right to legislate in the area of indecency and obscenity. The statute expressly states its intent "to preempt, to the exclusion" of local government, the regulation of obscene conduct. The question posed, then, is whether the Boise ordinance constitutes the regulation of obscene conduct, so as to fall within the area of authority expressly reserved to the state.

It is undisputed that Idaho's obscenity statute may sweep within its regulatory framework some forms of nudity. The statute makes it unlawful to sell, distribute, publish, print or exhibit obscene material. Obscene live conduct is defined in the statute to mean any physical body activity which appeals to the prurient interest and is patently offensive because it consists of sexual acts, masturbation, excretory functions, or lewd exhibition of the genitals or genital area. I.C. § 18–4101(1)(2)(a) and (b).

By comparison, the ordinance at issue here prohibits an individual who appears in public "in a state of nudity." While it is obvious that the "obscene live conduct," prohibited by the statute, will often involve a display of nudity that violates the ordinance, it is also clear that the ordinance goes much further and prohibits all public nudity, whether deemed obscene under the statute or not. Local enactments which merely extend the state law by way of additional restrictions or limitations are not invalid. *See Benewah County Cattlemen's Ass'n, Inc. v. Board of County Com'rs of Benewah County,* 105 Idaho 209, 214, 668 P.2d 85 (1983); *Voyles*

*v. City of Nampa,* 97 Idaho 597, 601, 548 P.2d 1217 (1976); *Taggart v. Latah County,* 78 Idaho 99, 102, 298 P.2d 979 (1956). For this reason, the Court finds that the City's ordinance is not expressly preempted by I.C. § 18–4113.

■ Plaintiffs argue that even if the ordinance is not expressly preempted by statute, the legislature has preempted such bans on nudity by implication. In *Caesar v. State,* 101 Idaho 158, 161, 610 P.2d 517 (1980), the Court described the doctrine of implied preemption as follows:

> Where it can be inferred from a state statute that the state has intended to fully occupy or preempt a particular area, to the exclusion of [local governmental entities], a [local] ordinance in that area will be held to be in conflict with the state law, even if the state law does not so specifically state.

In *Envirosafe Serv. of Idaho v. County of Owyhee,* 112 Idaho 687, 735 P.2d 998 (1987), the Court reiterated the *Caesar* standard and further explained that "[t]he doctrine of implied preemption typically applies in instances where, despite the lack of specific language preempting regulation by local governmental entities, the state has acted in the area in such a pervasive manner that it must be assumed that it intended to occupy the entire field of regulation." *Id.* at 689, 735 P.2d 998.

The Court has reviewed the Idaho legislature's efforts at regulating obscenity and similar conduct, and concludes that the lack of any specific statutory prohibitions on public nudity belies any suggestion that the state's comprehensive regulation of obscenity indicates an intention to preempt the field and preclude local regulation of public nudity. Admittedly, the legislature, in its adoption of obscenity laws, may have intended to address the same societal problems that the City of Boise was attempting to address in adopting its ban on public nudity. However, the doctrine of implied preemption does not go so far as to preclude local governments from targeting, through different means, the social ills that the legislature seeks to remedy. Overlap in purpose is not tantamount to conflict in method.

For these reasons, the Court finds that the State has not preempted, expressly or by implication, the City's ability to regulate public nudity. The City has the power to enact the ordinance, and the first factor of the *O'Brien* test is therefore satisfied.

■ The second factor of the *O'Brien* test is whether the regulation furthers an important or substantial government interest. In *City of Erie,* the court explained this factor as it related to nudity ordinances:

> The asserted interests of regulating conduct through a public nudity ban and of combating the harmful secondary effects associated with nude dancing are undeniably important. And in terms of demonstrating that such secondary effect pose a threat, the city need not "conduct new studies or produce evidence independent of that already generated by other cities" to demonstrate the problem of secondary effects, "so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses." *Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29. Because the nude dancing at Kandyland is of the same character as the adult entertainment at issue in *Renton, Young v. American Mini Theatres, Inc.,* and *California v. LaRue,* it was reasonable for Erie to conclude that such nude dancing was likely to produce the same secondary effects.... Even in cases addressing regulations that strike closer to the core of First Amendment values, we have accepted a state or local govern-

ment's reasonable belief that the experience of other jurisdictions is relevant to the problem it is addressing.

*City of Erie*, 120 S.Ct. at 1395. In this case, the Boise City Council has explicitly relied on *City of Erie* in justifying its efforts to restrict negative secondary effects.[4] Moreover, the Boise City Council expressly considered and relied on the same studies that the Erie City Council used to justify their nudity ordinance. Because reliance on those studies was found reasonable by the Supreme Court, this Court cannot now reject those studies as flawed despite the testimony of plaintiff's expert to that effect. That expert testimony was substantially equivalent, if not identical, to arguments he presented in his Amicus Brief to the Supreme Court in *City of Erie*. Plaintiffs have not alleged that new information has come to light since that decision. Thus, an examination as to the adequacy and reasonableness of those studies is precluded.

However, the Supreme Court's determination "that a legislative body may rely on foreign studies to establish its interest in a regulation does not relieve that entity from the obligation of demonstrating that the study must be 'reasonably believed to be relevant to the problem the city addresses.'" *Alameda Books, Inc.*, 222 F.3d 719, 726 (2000) (quoting *Renton* 475 U.S. at 51–52, 106 S.Ct. 925 (1986)). Therefore, while it was not necessary for the Boise City Council to undertake its own studies, the City could only rely on studies conducted by other cities if it reasonably believed that those studies were relevant to the problems that the City Council was attempting to address by adopting the nudity ordinance.

In considering the reasonableness of the Council's conclusions in this regard, the Court is mindful of the Supreme Court's admonitions about the limited role of the judiciary in scrutinizing legislative judgment. In *City of Erie*, the Supreme Court gave substantial deference to the members of the city council who "were familiar with downtown commercial Erie" and likely had "first-hand knowledge of what took place around nude dancing establishments in Erie." 120 S.Ct. at 1395; *see also American Mini Theatres*, 427 U.S. at 71, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976)(In upholding the validity of a zoning regulation, the court found "it is not our function to appraise the wisdom of [the City Council's] decision ... Moreover, the city must be allowed a reasonable opportunity to experiment with solutions to admittedly serious problems."); *Jones v. Intercable, Inc. v. City of Chula Vista*, 80 F.3d 320, 326 (9th Cir.1996) (courts "accord substantial deference to the predictive judgments" of legislative bodies when analyzing content-neutral regulations that burden speech) (quoting *Turner Broadcasting System, Inc. v. FCC*, 512 U.S. 622, 665, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994)). Thus, the plaintiffs in the instant action bear a burden to demonstrate that the council was clearly unreasonable in its determination that restriction of nudity in adult establishments would mitigate criminal behavior in the City of Boise.

In this respect, an expert could be relevant to this action and the court will therefore admit Dr. Linz's testimony. But for the most part, Dr. Linz's testimony focused on findings that the *City of Erie* court found could be reasonably relied upon. Plaintiffs have not produced evi-

---

4. The preamble states "WHEREAS, the City Council of the City of Boise is aware of studies done by other cities into the effects of sexually oriented businesses and relies upon those studies as a basis to support the passage of this ordinance as permitted by *City of Erie v. Pap's A.M. tdba "Kandyland"*, 529 U.S. 277, 120 S.Ct. 1382 (2000); ..."

dence suggesting that the studies reasonably relied upon in Erie, Pennsylvania were inapplicable to the City of Boise. Additionally, plaintiffs have not shown that the council's reasoning was patently false or even unreasonable. As a result, the court finds that the ordinance does further an important government interest.

The third factor in *O'Brien* is whether the government interest is unrelated to the suppression of free expression. Given the similarities between the Erie and Boise ordinances, it appears that the finding by the Supreme Court in *City of Erie* that this factor is satisfied is controlling. The parties do not dispute this conclusion.

The fourth factor—that the restriction is no greater than is essential to the furtherance of the government interest—requires a closer examination. In *City of Erie,* the court found that this requirement was satisfied, because "[t]he requirement that dancers wear pasties and G-strings is a minimal restriction in furtherance of the asserted government interests, and the restriction leaves ample capacity to convey the dancer's erotic message." at 1397. Other than to observe that least restrictive means analysis is not necessary because the ordinance was a content-neutral restriction, the Court provided little enlightenment as to how this factor of the *O'Brien* test is to be applied in the concrete case. This is unfortunate, because it is clear that the Boise ordinance imposes a far more substantial restriction than does the ordinance at issue in *City of Erie*—the latter imposing only a de minimis restriction on nude erotic dancing and the former imposing a conservative dress code.

However, other decisions of the Supreme Court make clear that the fourth part of the *O'Brien* test involves questioning whether the statute is "narrowly tailored" to correct the social ill at which it is targeted. *See, Ward v. Rock Against Racism,* 491 U.S. 781, 798–99, 109 S.Ct. 2746,

105 L.Ed.2d 661 (1989); *Board of Trustees of the State University of New York v. Fox,* 492 U.S. 469, 478, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989). A statute is narrowly tailored if it "targets and eliminates no more than the exact source of the 'evil' it seeks to remedy." *Russell C. Frisby, et al., v. Sandra C. Schultz, et al.,* 487 U.S. 474, 485, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988); *City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 808–10, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984). Thus, "the essence of narrow tailoring" is "focusing on the evils the [government] seeks to eliminate ... [without] significantly restricting a substantial quantity of speech that does not create the same evils." *Turner Broadcasting System, Inc. v. FCC (Turner II),* 520 U.S. 180, 216, 117 S.Ct. 1174, 137 L.Ed.2d 369 (1997) (citing *Ward v. Rock Against Racism,* 491 U.S. 781, 799, n. 7, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989)).

The narrow tailoring requirement is met if the rule is "not substantially broader than necessary to achieve the government's interest." *Ward,* 491 U.S. at 800, 109 S.Ct. 2746. Indeed, a complete ban can be narrowly tailored, but only if each activity within the proscription's scope is an appropriately targeted evil. *Frisby* at 485, 108 S.Ct. 2495. But, "a regulation is not 'narrowly tailored'—even under the more lenient tailoring standards applied in *Ward* and *Renton*—where, ... 'a substantial portion of the burden on speech does not serve to advance [the State's content-neutral] goals.'" *Simon & Schuster, Inc., v. Members of the New York State Crime Victims Board, et al.,* 502 U.S. 105, 112 S.Ct. 501, 116 L.Ed.2d 476 (1991); *see also, Ward* at 799, 109 S.Ct. 2746.

The plaintiffs contend that the Supreme Court's approval of an ordinance which permits partial nudity—requiring only pasties and a G-string—somehow suggests

that this is the only dress requirement that can be constitutionally imposed. However, given the broad discretion accorded to legislative bodies under the "narrow tailoring" standard, it is clear that the Supreme Court's decision does not impose such a bright line rule. Although pasties and a G-string restriction may be such a minimal intrusion upon the dancer's ability to convey an erotic message that it is not necessary to even consider whether the ordinance is narrowly tailored to achieve the city's objective, this does not mean that an ordinance which requires a more modest dress style would not satisfy the narrow tailoring requirement. Courts have consistently found this analysis proper. In *Colacurcio v. City of Kent,* the Ninth Circuit rejected a challenge to a ten-foot setback provision in erotic dancing clubs, although less restrictive regulations (i.e., four or six foot setbacks) could have achieved the same result. 163 F.3d 545, 554, 557 (9th Cir.1998). Also, the Court recognizes that ordinances requiring more covering than just pasties and a G-string have been upheld under the narrow tailoring test in some jurisdictions. *Bright Lights, Inc. v. City of Newport,* 830 F.Supp. 378, 384 (E.D.Ky.1993)(finding bikini requirements for erotic dancers was sufficiently narrow in advancing goals of reforming city's reputation as "home to smorgasbord of vice"); *Café 207, Inc. v. St. Johns County,* 856 F.Supp. 641, 646 (M.D.Fla.1994).

The problem here is that the city's ordinance does not just require the wearing of pasties and a G-string, nor does it require the wearing of a bikini or other partial cover-up. Rather, the ordinance would ban the wearing of anything more revealing than short shorts and a modest bikini top. In doing so, it would completely interfere with the erotic message of nudity that the Supreme Court has indicated is entitled to limited First Amendment protection.[5] It would seem clear that a city may go farther than the City of Erie and require more than just the wearing of pasties and a G-string.[6] However, by not only prohibiting nudity, but also imposing a conservative dress code which precludes any expressive nude conduct, the City has "burden[ed] substantially more speech than is necessary to further the government's legitimate interests," and the restriction is "substantially broader than necessary to achieve the government's interest." *Ward,* 109 S.Ct. at 2746, 2758.

The Court won't tell the City how to draft their ordinance, except to say that the City of Erie's ordinance clearly passes constitutional muster, and the City of Boise's ordinance clearly does not.

Accordingly,

IT IS NOW THEREFORE ORDERED, that Boise City Ordinance 6008, creating a new Title 6 Chapter 22 of the Boise City Code title Public Indecency, as amended by the Boise City Council on August 22, 2000 is unconstitutional, void, and unenforceable and of no force and effect under the First Amendment to the United States Constitution, and that the Defendant, its agents, servants, employees or anyone else acting in concert with the

---

**5.** *See City of Erie,* 120 S.Ct. at 1388–89, finding that "nude dancing ... is expressive conduct that is entitled to some quantum of protection under the First Amendment." *See also, Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 566, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991), finding that "nude dancing of the kind sought to be performed here is expressive conduct within the outer perimeters of the First Amendment, though we view it as only marginally so."

**6.** As noted above, courts in other jurisdictions have upheld ordinances requiring more clothing than required by the City of Erie statute, while the Court is unaware of any case in which a Court has upheld an ordinance more restrictive than the one presented here.

Defendant or on its behalf shall be, and the same are hereby permanently enjoined from enforcing said Ordinance.

IT IS FURTHER ORDERED, that defendant's Motion to Strike Expert Testimony (Docket No.37) shall be, and is hereby, DENIED.