804 P.2d 911

**In the Matter of the Suspension of the Driver's License of Dennis L. McNEELY, Defendant.**

**Dennis L. McNEELY, Petitioner–Appellant,**

v.

**STATE of Idaho, Respondent.**

No. 17962.

Court of Appeals of Idaho.

July 24, 1990.

Petition for Review Denied Feb. 20, 1991.

Lynn, Scott, Hackney & Jackson, Boise, for petitioner-appellant. Robert L. Jackson (argued), Boise.

Jim Jones, Atty. Gen., Myrna A.I. Stahman, Deputy Atty. Gen. (argued), Boise, for respondent.

WALTERS, Chief Justice.

This case involves the suspension of a driver's license pursuant to Idaho's implied consent statute, I.C. § 18–8002. A magistrate ordered suspension of Dennis McNeely's driver's license for a period of 180 days based upon McNeely's failure to submit to a blood alcohol concentration (BAC) test at the time of his arrest for driving under the influence of alcohol (DUI). On appeal, the district court upheld the magistrate's order. Appealing further, McNeely contends

that he should have been permitted to speak with his attorney prior to deciding whether to submit to the BAC test, and that the advisory form read to him by the arresting police officer prior to testing did not apprise him of the consequences of his refusal. For the reasons explained below, we affirm the district court's decision upholding the magistrate's order suspending McNeely's driver's license.

The essential facts of this case are brief. On April 1, 1988, McNeely was stopped by a Boise police officer for suspicion of DUI. After McNeely performed unsatisfactorily on several field sobriety tests, he was arrested for DUI, taken to the police station, and asked to submit to a breath test to determine the alcohol concentration in his blood. Prior to the request, the arresting officer read McNeely an advisory form outlining the consequences of refusing to take the test.[1] I.C. § 18–8002(3). McNeely listened to the officer read the form, but then refused to be tested, stating that he wished to talk to an attorney and that he did not understand the advisory form. McNeely's driver's license was immediately seized by the officer, and an affidavit of refusal was made to the magistrate division of the district court, recommending that McNeely's license be suspended. I.C. § 18–8002(4)(c). Upon McNeely's request, a show cause hearing was held on April 27, 1988, at which time a magistrate determined that the officer's seizure of McNeely's license was valid. The magistrate then ordered suspension of McNeely's license for 180 days. The magistrate's decision was upheld on review by the district court. This appeal followed.

McNeely asserts that Idaho's implied consent statute—which denies a person arrested for DUI the right to consult with an attorney before submitting to a BAC test—violates his constitutional and statutory right to counsel.[2] Specifically, McNeely

1. The form utilized by the officer essentially contained the requisite provisions of I.C. § 18–8002(3) quoted in footnote 2, *infra*.

2. At the time of his arrest, I.C. § 18–8002 read:

(1) Any person who drives or is in actual physical control of a motor vehicle in this state shall be deemed to have given his consent to an evidentiary test for concentration of alcohol, drugs or other intoxicating substances as defined in section 18–8004, Idaho Code, provided that such test is administered at the request of a police officer having reasonable grounds to believe that person has been driving or in actual physical control of a motor vehicle while under the influence of alcohol, drugs or of any other intoxicating substances.

(2) Such person shall not have the right to consult with an attorney before submitting to an evidentiary test for concentration of alcohol, drugs or other intoxicating substances.

(3) At the time an evidentiary test for concentration of alcohol, drugs or other intoxicating substances is requested, the person shall be informed that if he refuses to take the test:

(a) His license will be seized by the police officer and a temporary permit will be issued; provided, however, that no peace officer shall issue a temporary permit pursuant to this section to a driver whose license or permit has already been and is suspended or revoked because of previous violations:

(b) He has the right to request a hearing within seven (7) days to show cause why he refused to take the test;

(c) If he does not request a hearing or does not prevail at the hearing, his license will be suspended absolutely for one hundred eighty (180) days; and

(d) After submitting to the test he may, when practicable, at his own expense, have additional tests made by a person of his own choosing.

(4) If the motorist refuses to take the evidentiary test after the information has been given in accordance with subsection (3) above:

(a) His license or permit shall be seized by the police officer and forwarded to the court and a temporary permit shall be issued by the police officer which allows him to operate a motor vehicle until the date of his hearing, if a hearing is requested, but in no event for more than thirty (30) days; provided, however, that no peace officer shall issue a temporary permit pursuant to this section to a driver whose license or permit has already been and is suspended or revoked because of previous violations;

(b) A written request may be made within seven (7) calendar days for a hearing before the court; if requested, the hearing must be held within thirty (30) days of the seizure unless this period is, for good cause shown, extended by the court for one (1) additional thirty (30) day period. The court, in granting such an extension, may, for good cause shown, extend the defendant's temporary driving privileges for one (1) additional thirty (30) day period. The hearing shall be limited to the question of why the defendant did not take the test, and the burden of proof shall be upon the defendant; the court shall suspend

contends: (1) that the statute deprives him of the right to counsel guaranteed by the sixth amendment of the United States Constitution and art. 1, § 13 of the Idaho Constitution; (2) that I.C. §§ 19–853(a) and 19–515 provide him with a statutory right to counsel in criminal proceedings; and (3) that pursuant to the due process and equal protection clauses of the fourteenth amendment to the United States Constitution and art. 1, § 13 of the Idaho Constitution he was entitled to speak with an attorney prior to deciding whether to take the BAC test. McNeely also asserts that the advisory form read to him by the arresting officer was confusing and did not provide him with fair warning of the consequences of his refusal.

■ Our consideration of McNeely's claims are guided by the following principles. When reviewing an appellate decision of the district court which has reviewed a magistrate's findings and conclusions, we examine the record of the magistrate independent of, but with due regard for the district court's decision. *Cole v. Kunzler*, 115 Idaho 552, 768 P.2d 815 (Ct. App.1989). Based upon our review of the magistrate's findings and conclusions, we will affirm or reverse the district court's appellate decision accordingly. *Carr v. Carr*, 116 Idaho 754, 779 P.2d 429 (Ct.App.

1989). Because the issues raised by McNeely are purely questions of law we will exercise free review. *State v. Breed*, 111 Idaho 497, 725 P.2d 202 (Ct.App.1986).

## I

## SIXTH AMENDMENT CLAIM

■ McNeely first submits that the implied consent statute is unconstitutional because it deprives him of the right to counsel in a criminal proceeding. McNeely contends that even though license suspension under the statute is "labelled" civil in nature, the BAC testing procedure constitutes a "critical stage" in the ensuing criminal proceedings for DUI. *See State v. Spencer*, 305 Or. 59, 750 P.2d 147 (1988). Therefore, McNeely asserts that the sixth amendment right to counsel attaches at the time a licensee is *arrested* for DUI and is asked to take a BAC test. McNeely does not, however, argue for an absolute right to counsel; to the contrary, he avers that a licensee should only be provided with a limited opportunity to consult with counsel, if counsel is available, prior to the licensee's decision whether to take the test. *See id.*, 750 P.2d at 156.

We disagree with McNeely's contentions for two reasons. First, license suspension

all his driving privileges immediately for one hundred eighty (180) days unless it finds that the police officer did not have probable cause to stop and request him to take the test or that the request violated his civil rights;

(c) If a hearing is not requested by written notice to the court concerned within seven (7) calendar days, upon receipt of a sworn statement by the police officer of the circumstances of the refusal, the court shall suspend his driving privileges for one hundred eighty (180) days during which time he shall have absolutely no driving privileges of any kind; and

(d) After submitting to the test at the request of the police officer, he may, when practicable, at his own expense, have additional tests made by a person of his own choosing. The failure or inability to obtain an additional test or tests by a person shall not preclude the admission of an evidentiary test for alcohol concentration taken at the direction of the police officer unless the additional test was denied by the police officer.

(5) Any suspension of driving privileges under this section shall be a civil penalty separate and apart from any other suspension imposed for a violation of other Idaho motor vehicle codes or for a conviction of an offense pursuant to this chapter, and may be appealed to the district court.

(6) No hospital, hospital officer, agent, or employee, or health care professional licensed by the state of Idaho shall be held liable in damages in any civil proceeding for a cause of action based upon assault, battery or false imprisonment, or be subject to prosecution under chapter 9 or 29, title 18, Idaho Code, for any act arising out of administering an evidentiary test for alcohol concentration at the request of a police officer in the manner described by this section.

(7) "Actual physical control" as used in this section, shall be defined as being in the driver's position of the motor vehicle with the motor running or with the motor vehicle moving.

(8) Any written notice required by this section shall be effective upon mailing.

The statute was amended in 1989. *See* 1989 Idaho Sess.Laws, ch. 88, § 60, p. 199; ch. 366, § 1, p. 915; ch. 367, § 1, p. 920.

under Idaho's implied consent statute is intended as a civil, rather than criminal, penalty for failure to submit to an evidentiary BAC test. 1987 Idaho Sess.Laws, ch. 220, § 1, p. 469; *see State v. Griffiths*, 113 Idaho 364, 744 P.2d 92 (1987). The Idaho Supreme Court has held that the sixth amendment right to counsel does not attach to license-suspension proceedings. *Mills v. Bridges*, 93 Idaho 679, 471 P.2d 66 (1970) (decided under I.C. § 49–352, precursor of I.C. § 18–8002); *State v. Ankney*, 109 Idaho 1, 704 P.2d 333 (1985). In *State v. Woolery*, 116 Idaho 368, 775 P.2d 1210 (1989), the Idaho Supreme Court discussed the purpose of the implied consent statute:

This section [I.C. § 18–8002] does not in any way discuss criminal offenses related to driving under the influence of alcohol. Rather, it sets forth the administrative procedures the legislature established in its attempt "to restrict or control the use of the highways by those persons who cannot or will not conform their actions to the accepted standards of civilized behavior." [Citation omitted.] The legislature acknowledged that some individuals refuse to comply with their previously granted consent to submit to an evidentiary test. Rather than condone a physical conflict, the legislature provided for the administrative revocation of the license of an individual who refuses to comply with his previously given consent. Such legislative acknowledgement was not meant to hamstring the ability of law enforcement to properly investigate and obtain evidence of serious crimes committed by those individuals who have chosen to drink and then drive.

116 Idaho at 373, 775 P.2d at 1215. Although the BAC testing procedure is conducted in association with an individual's arrest for suspicion of DUI, it is not intertwined with the criminal proceedings. To the contrary, testing for BAC under the implied consent statute is an evidentiary procedure and, as in this case, is conducted before formal criminal charges are initiated by the filing of a complaint. Therefore, the testing procedure does not constitute a "critical stage" of the underlying criminal

proceedings for DUI. *State v. Hoch*, 500 So.2d 597 (Fla.App.1986).

Second, we note that under the implied consent statute, anyone who accepts the privilege of operating a motor vehicle upon Idaho's highways has consented in advance to submit to a BAC test without the right to consult with counsel. I.C. § 18–8002(2); *see Seders v. Powell*, 298 N.C. 453, 259 S.E.2d 544 (1979); *McCharles v. State*, 99 Nev. 831, 673 P.2d 488 (1983). Providing a person with a right to counsel—even a "limited" right as suggested by McNeely— would defeat the state's underlying purpose of expediting the collection of evidence that a person is driving under the influence of alcohol or drugs.

We therefore hold that a licensee required to submit to a BAC test under the implied consent statute has no constitutional right to consult with counsel prior to taking that test. In so holding, we align ourselves with a majority of other jurisdictions which have addressed the constitutionality of implied consent provisions under similar statutes and have rejected challenges such as McNeely has raised in the instant case. *See Seders v. Powell, supra; see e.g., Kunzler v. Miller*, 154 Ariz. 570, 744 P.2d 671 (1987); *Calvert v. State Department of Revenue, Motor Vehicle Division*, 184 Colo. 214, 519 P.2d 341 (1974); *State v. Hoch*, 500 So.2d 597 (Fla.App. 1986); *People v. Griffith*, 143 Ill.App.3d 683, 97 Ill.Dec. 750, 493 N.E.2d 413 (1986); *State v. Bristor*, 236 Kan. 313, 691 P.2d 1 (1984); *Fiew v. Department of Public Safety*, 525 So.2d 119 (La.App.1988); *State v. Jones*, 457 A.2d 1116 (Me.1983); *State v. Armfield*, 214 Mont. 229, 693 P.2d 1226 (1984); *McCharles v. State*, 99 Nev. 831, 673 P.2d 488 (1983).

## II

### STATUTORY CLAIM

■ Next, McNeely claims that Idaho statutory law requires that he be given a chance to contact an attorney before taking the BAC test. Specifically, McNeely rests his argument upon I.C. § 19–853(a) which provides that, upon detainment or arrest by

a law-enforcement officer, an individual must be informed of his right to counsel. McNeely contends that this language mandates that a licensee who is asked to submit to a BAC test must have immediate access to counsel. *See State v. Ankney*, 109 Idaho at 7–8, 704 P.2d at 339–40 (Bistline, J., concurring and dissenting). McNeely also contends I.C. § 19–515 requires that *upon* his arrest for DUI, he was entitled to visit with an attorney before being subjected to the testing procedures.

Idaho Code § 19–853(a) was enacted to codify the procedural requirements of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *See State v. Culbertson*, 105 Idaho 128, 666 P.2d 1139 (1983).[3] Although the statute refers to a detainee's right to counsel, the Idaho Supreme Court has held that this right attaches at the accusatory rather than an investigative stage of criminal proceedings. *State v. Powers*, 96 Idaho 833, 840, 537 P.2d 1369, 1376 (1975); *accord, State v. Wuthrich*, 112 Idaho 360, 363, n. 1, 732 P.2d 329, 332 n. 1 (Ct.App.1986) (Addendum 1987). In this case, McNeely contends that once he was placed under arrest, the police should have honored his request for counsel, regardless of whether it occurred prior to his decision not to submit to the BAC test. We disagree. The purpose of the BAC test under the implied consent statute is to gain evidence of a person's blood alcohol level in order to determine whether he or she was driving under the influence. The procedure is investigatory in nature. *See State v. Woolery, supra.* Therefore,

McNeely was not entitled to consult with counsel before submitting to the test. *See State v. Powers, supra.*

■ Likewise, we also conclude that I.C. § 19–515 affords McNeely no right to counsel before deciding to submit to a BAC test. This statute provides a person who is arrested with the right to visit with an attorney upon request.[4] However, nothing in the language of this statute implies that the arrested person's right to counsel should be extended beyond any safeguard provided under the sixth amendment securing an accused's right to counsel during critical stages of a criminal proceeding. *See United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). This protection does not extend to investigatory proceedings. *See State v. Powers, supra.* We therefore hold that McNeely was not entitled to a statutory right to counsel before submitting to the BAC test.

## III

## DUE PROCESS CLAIMS

McNeely next raises two issues regarding alleged due process deprivations under the implied consent statute. Although McNeely asserts his claims under both the United States and Idaho Constitutions, because the due process guarantees are substantially the same our analysis of his claims will be the same for both provisions. *See Rudd v. Rudd*, 105 Idaho 112, 666 P.2d 639 (1983).

---

**3.** Idaho Code § 19–853(a) provides as follows:

If a person who is being detained by a law enforcement officer, or who is confined or who is the subject of hospitalization proceedings pursuant to sections 66–322, 66–326, 66–329 or 66–409, Idaho Code, or who is under formal charge of having committed, or is being detained under a conviction of, a serious crime, is not represented by an attorney under conditions in which a person having his own counsel would be entitled to be so represented, the law enforcement officers concerned, upon commencement of detention, or the court, upon formal charge or hearing, as the case may be, shall:

(1) clearly inform him of his right to counsel and of the right of a needy person to be

represented by an attorney at public expense; and

(2) if the person detained or charged does not have any attorney, notify the public defender or trial court concerned, as the case may be, that he is not so represented. As used in this subsection, the term "commencement of detention" includes the taking into custody of a probationer.

**4.** Idaho Code § 19–515 states:

The defendant must in all cases be taken before the magistrate without unnecessary delay, and any attorney at law entitled to practice in courts of record of the state of Idaho may, at the request of the prisoner after such arrest, visit the person so arrested.

## A. Right to Counsel

McNeely first contends that his right to consult with counsel prior to taking a BAC test is a liberty interest protected by due process. McNeely submits that his freedom to consult with a lawyer before deciding to submit to the BAC test should not be foreclosed by the statute's ban on attorney consultation. *See State v. Newton*, 291 Or. 788, 636 P.2d 393 (1981). He points to a willingness on the part of some jurisdictions to grant a licensee a reasonable opportunity to communicate with counsel where doing so will not impair the accuracy of the BAC test. *See e.g., Sites v. State*, 300 Md. 702, 481 A.2d 192 (1984). McNeely's attack upon the statute is therefore not one of procedural due process, but rather one of substantive due process—the right to be free from arbitrary deprivations of life, liberty or property. *See State v. Reed*, 107 Idaho 162, 167, 686 P.2d 842, 847 (Ct. App.1984).

■ Substantive due process, as guaranteed by both the United States and Idaho Constitutions, embodies the requirement that a statute bear a reasonable relationship to a permissible legislative objective. *Id.* When dealing with legislation involving social or economic interests, we assume a deferential standard of review; in this context, "substantive due process" means that legislation which deprives a person of life, liberty, or property must have a rational basis—that is, the reason for the deprivation may not be so inadequate that it may be characterized as arbitrary. *See Sandpoint Convalescent Services, Inc. v. Idaho Department of Health and Welfare*, 114 Idaho 281, 756 P.2d 398 (1988); *Pace v. Hymas*, 111 Idaho 581, 726 P.2d 693 (1986). The United States Supreme Court has intimated that a more assertive standard of review should be applied to legislation dealing with such fundamental interests as civil rights, or to an accused's right to fairness in the criminal justice process. *See State v. Reed*, 107 Idaho at 167, 686 P.2d at 847, *citing United States v. Carolene Products Company*, 304 U.S. 144, 152–53, n. 4, 58 S.Ct. 778, 783–84, 82 L.Ed. 1234 (1938); *See also* L. TRIBE, AMERICAN CONSTITU-TIONAL LAW § 11–2 (2d ed. 1988). In this case, McNeely urges us to review the implied consent statute under this more aggressive standard, because—as he asserts—it deprives him of a constitutionally protected right to counsel in criminal proceedings. However, as we discussed in Part I of this opinion, license suspension under the implied consent statute is a civil proceeding. *State v. Woolery, supra.* Therefore, our task is to determine whether application of the ban on attorney contact contemplated by the statute is arbitrary, capricious or without a rational basis. *Sandpoint Convalescent Services, Inc. v. Idaho Department of Health and Welfare, supra.*

■ Based upon our review, we conclude that the legislative scheme of I.C. § 18–8002(2)—prohibiting a licensee from consulting with counsel before submitting to a BAC test—is rationally related to a legitimate government interest. We note that the interest of the state in preventing drunk drivers from operating automobiles is particularly strong. *State v. Ankney*, 109 Idaho at 4, 704 P.2d at 336, *citing Illinois v. Batchelder*, 463 U.S. 1112, 103 S.Ct. 3513, 77 L.Ed.2d 1267 (1983). To further this goal, one of the underlying purposes of the implied consent statute is to provide an incentive for motorists to cooperate with police in determining the BAC levels by reasonably precise methods. *See State v. Breed*, 111 Idaho at 501, 725 P.2d at 206. The state's interest in providing an expedient blood testing method—and thereby increasing its accuracy in detecting drunk drivers—is rationally served by eliminating one of the impediments to BAC testing—the time needed by a licensee to first contact, then consult, with his or her attorney before deciding whether or not to be tested. *See Mackey v. Montrym*, 443 U.S. 1, 18, 99 S.Ct. 2612, 2621, 61 L.Ed.2d 321 (1979) (presuspension hearing could substantially undermine the state's interest in public safety by giving licensees significant incentive to refuse a BAC test; such an act could be construed as a dilatory tactic greatly impeding the state's ability to obtain accurate test results, and would increase fiscal and administrative burdens on

the state). Although it might be advantageous for a licensee to consult with an attorney prior to submitting to a BAC test, we see no reason to abrogate the legislature's authority to deny this right in order to advance its objective to provide for safer highways. Furthermore, this prohibition does not deprive the licensee of any substantial legal rights, due to the statute's prompt postsuspension review procedure. *See* I.C. § 18–8002(4)(b); *Mackey v. Montrym, supra.* We therefore hold that McNeely's substantive due process rights were not violated by refusing him the right to consult with counsel at the time he was asked to submit to the BAC test.

### B. Advisory Form

Next, McNeely raises a procedural due process attack on the implied consent statute. He submits that the advisory form read to him at the time of his detention did not provide him with a fair warning of the consequences of his refusal to take the BAC test. Specifically, McNeely submits that the advisory form did not adequately explain that suspension of his driver's license was "absolute," thereby depriving him of *all* driving privileges—including driving privileges for work purposes—for a 180–day period. McNeely also asserts that the form did not specify that he must submit to a BAC test chosen solely by the arresting police officer. Finally, McNeely maintains the form did not indicate that he would be required to carry the burden of proof at his show cause hearing.

■■■ Although McNeely raises this issue as an attack upon the substance of the advisory form read to him at the time of his arrest, we infer from his argument that he—in essence—challenges the postsuspension procedures included in the implied consent statute. Suspension of a driver's license pursuant to the implied consent statute is a state action that adjudicates important interests of the licensee; the licensee cannot be divested of this liberty interest without procedural due process. *See Dixon v. Love,* 431 U.S. 105, 97 S.Ct. 1723, 52 L.Ed.2d 172 (1977); *State v. Ankney, supra.* When conducting a procedural due process analysis, three factors must be considered: first, the private interest affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional safeguards; and third, the government's interest, including the function involved and the fiscal and administrative burdens that additional or substitute procedural requirements would entail. *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976); *State v. Ankney,* 109 Idaho at 4, 704 P.2d at 336.

■■■ The first factor we must consider in this analysis is McNeely's interest in his driver's license. It is well recognized that an individual's interest in a driver's license is substantial. *See Mackey v. Montrym, supra; State v. Ankney, supra.* However, the licensee's interest is not so substantial as to require a presuspension hearing, *Dixon v. Love,* 431 U.S. at 113, 97 S.Ct. at 1727–28, although it may be affected by the length of the suspension period and timeliness of a postsuspension review proceeding. *Mackey v. Montrym,* 443 U.S. at 12, 99 S.Ct. at 2618. Under I.C. § 18–8002, the licensee who refuses to take a BAC test is entitled to a timely postsuspension hearing within thirty days of seizure of his or her driver's license.

■■■ The second factor which must be considered is the likelihood of an erroneous deprivation of McNeely's driving privileges. As pointed out in *Mackey v. Montrym, supra,* where prompt postdeprivation review is available for correction of administrative error in obtaining facts leading up to the licensee's suspension, all that is required is that the predeprivation procedures provide a reasonably reliable basis for concluding that the facts justifying the official action are true. *See* 443 U.S. at 13, 99 S.Ct. at 2618. In the case of Idaho's implied consent statute, the officer requiring the licensee to take the BAC test must submit a sworn statement to the court identifying the circumstances surrounding the individual's refusal to submit to the BAC test. I.C. § 18–8002(4)(c).

Finally, we must consider the state's interest. As pointed out in our previous discussion regarding McNeely's substantive due process claims, the state's interest in prohibiting drunk drivers from operating motor vehicles is particularly strong, and should not be circumvented by dilatory tactics aimed at impeding the state's ability to obtain accurate BAC test results. *See* Part III(A), *supra.*

Having considered the postsuspension procedures in the implied consent statute in light of the above, we conclude that McNeely was not denied procedural due process based upon the content of the advisory form. To begin with, I.C. § 18–8002(3) and the advisory form state that upon refusal to submit to the BAC test, the driver's license "will be suspended absolutely for one hundred eighty (180) days." Even though a licensee's interest in maintaining his or her license for employment purposes is substantial, we feel it must be subordinated to the state's interest in preventing intoxicated persons from driving on Idaho's highways, especially where the individual is entitled to postsuspension review procedures. *See State v. Ankney, supra.* Furthermore, although McNeely argues that the statute is vague, we do not find it to be so. A literal interpretation of this provision would lead the average person to believe that such a suspension would not enable the licensee to obtain a temporary or limited license to drive for any purpose. When the meaning of a statute is clear, it should be read literally, neither adding nor taking away anything by judicial construction. *St. Benedict's Hospital v. County of Twin Falls,* 107 Idaho 143, 686 P.2d 88 (Ct.App.1984). In this case, we believe that the implied consent statute adequately informs the public that suspension of the driver's license will be unequivocal upon refusing to take a BAC test.[5]

█ Likewise, we find no due process violation due to the fact that McNeely was not offered the BAC test of *his* choice. Idaho Code § 18–8004(1) indicates that it is not the licensee who can chose the BAC

test to be given. *See In the Matter of Griffiths,* 113 Idaho 364, 370, 744 P.2d 92, 98 (1987). Permitting the licensee to choose which test will be given would pose a burdensome requirement on law enforcement agencies, requiring them to have available a variety of testing procedures which may or may not be within their financial constraints. *Id.* Such a requirement would undermine the state's interest in obtaining accurate BAC test results. Furthermore, although the statute does not permit a licensee to pick which BAC test he or she will be administered, it does provide the licensee with the option of having additional tests conducted once the original test has been performed. I.C. § 18–8002(4)(d). This safeguard apparently provides the licensee with the opportunity to test the sufficiency of the original test results, and avoid the consequences of an erroneous deprivation of his or her driving privileges.

█ Finally, we do not believe that the implied consent statute violated McNeely's due process rights by not specifying that he would be required to carry the burden of proof at his show cause hearing. Other jurisdictions have held that a licensee whose driving privileges have been suspended under an implied consent law bears the burden of proving that the action was inappropriate. *See Sutton v. Edgar,* 147 Ill.App.3d 723, 101 Ill.Dec. 113, 498 N.E.2d 295 (1986); *Foks v. Andrews,* 55 Ohio App.2d 253, 380 N.E.2d 756 (1977). We agree with this conclusion.

In summary, we hold that McNeely was not deprived of substantive due process by refusing his request to contact counsel prior to his decision to take a BAC test. We further hold that McNeely's procedural due process rights were not violated by the notice contained in the advisory form read to him prior to his refusal. In so holding, we follow other jurisdictions which have found no due process violations in their implied consent laws. *See e.g., Drake v. Colorado Department of Revenue, Motor Vehicle Division,* 674 P.2d 359 (Colo.1984), *citing Calvert v. State Department of*

---

5. *See, in particular,* I.C. § 18–8002(3)(c), (4)(b)  and (4)(c), set forth in footnote 2, *supra.*

*Revenue, Motor Vehicle Division, supra; State v. Hoch,* 500 So.2d 597 (Fla.App. 1986); *People v. Griffith* (Ill.) *supra; State v. Knous,* 313 N.W.2d 510 (Iowa 1981); *State v. Armfield,* 214 Mont. 229, 693 P.2d 1226 (1984); *State v. DeLorenzo,* 210 N.J. Super. 100, 509 A.2d 238 (1986).

## IV

## EQUAL PROTECTION RIGHTS

Finally, we discuss McNeely's equal protection claim. McNeely submits that denying him the right to counsel at the time he refused the BAC test deprived him of the constitutional safeguard of legal representation provided to others accused of crimes involving jail sentences. As a result, McNeely contends that due to I.C. § 18–8002(2) he was denied equal protection.

We initially note that McNeely bases his claim on the erroneous assumption that a license suspension conducted under the implied consent statute is a criminal proceeding. This assumption is misguided. *See* Part I, *supra.* Nonetheless, we will analyze McNeely's claim to determine if he has been afforded equal protection under the statute.

In *State v. Breed, supra,* we conducted an equal protection analysis of I.C. § 18–8002 based upon the appellant's claim that the statute prohibited a person who had refused to take a BAC test from obtaining a limited license to drive, while a person convicted of DUI could obtain such a license. In conducting this analysis, we noted the following rule:

> The equal protection clauses of the state and federal constitutions embrace the principle that all persons in like circumstances should receive the same benefits and burdens of the law. Equal protection issues focus upon classifications within statutory schemes that allocate benefits or burdens differently among the categories of persons affected. [Citation omitted.] The first step in an equal protection analysis is to identify the classification under attack. The second is to articulate the standard under which the classification will be tested. The third is to determine whether the standard has been satisfied. [Citation omitted.]

111 Idaho at 500, 725 P.2d at 205.

In this case the class which McNeely urges us to analyze is obvious: those individuals deprived of a right to counsel when asked to submit to a BAC test under the implied consent statute. Contrary to McNeely's claim, this group does not represent a suspect class, nor are there any fundamental interests involved; the classes and interests are those affected by social and economic legislation. *Id.* at 501, 725 P.2d at 206; *see* Part III(A), *supra.* Under these circumstances, we conclude that the standard to be employed is one of rational basis, requiring only that the statutory scheme be related to some legitimate government purpose. *State v. Breed,* 111 Idaho at 501, 725 P.2d at 206.

As we have discussed in Part III(A) of this opinion regarding McNeely's substantive due process claim, the implied consent statute's prohibition against licensee-attorney contact prior to taking a BAC test is rationally related to the legitimate government interest of obtaining expedient and accurate BAC test results, thereby increasing the likelihood of detecting drunk drivers. *See State v. Breed, supra.* We see no reason here to depart from that conclusion. We therefore hold that the rational basis test is satisfied, and that none of McNeely's equal protection rights have been violated. This holding is in conformance with other jurisdictions which have found no equal protection violations in their implied consent laws. *See e.g., Murray v. Thorneycroft,* 131 Ariz. 156, 639 P.2d 346 (App.1981); *De Scala v. Motor Vehicle Division of Department of Revenue,* 667 P.2d 1360 (Colo.1983); *People v. Mourillon,* 124 Ill.App.3d 218, 79 Ill.Dec. 562, 463 N.E.2d 1337 (1984); *State v. Baldwin,* 127 N.H. 368, 500 A.2d 693 (1985); *In re McCain,* 84 N.M. 657, 506 P.2d 1204 (1973); *Gableman v. Hjelle,* 224 N.W.2d 379 (N.D.1974).

The district court's appellate decision, upholding the magistrate's order suspending

of McNeely's driver's license, is therefore affirmed. Costs to respondent. No attorney fees on appeal.

SWANSTROM, J., concurs.

BURNETT, Justice, specially concurring.*

I concur fully in all parts of the opinion except those in which the constitutional right to counsel is discussed. On that issue I concur only in the result, acknowledging that the outcome is mandated by current decisions of our State Supreme Court. However, for reasons expressed in *Triplett v. State*, 119 Idaho 193, 804 P.2d 922 (Ct. App. 1990), I urge our Supreme Court to reexamine the right to counsel where a motorist is placed under arrest and asked to submit to an evidentiary test.

* Judge Burnett's specially concurring opinion was prepared prior to his resignation on July 16, 1990.