**IN THE SUPREME COURT OF THE STATE OF IDAHO**
Docket No. 35980

IDAHO DAIRYMEN'S ASSOCIATION, )
INC., an Idaho non-profit corporation; THE )
IDAHO CATTLE ASSOCIATION, INC., a )
Idaho non-profit corporation, )
)
     **Plaintiffs/Appellants,** )
v. )
)
GOODING COUNTY, a body politic and )
corporate of the State of Idaho, )
)
     **Defendants/Respondents.** )
)

**Twin Falls, November 2009**

**2010 Opinion No. 12**

**Filed: February 1, 2010**

**Stephen W. Kenyon, Clerk**

---

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Gooding County.  Hon. R. Barry Wood, District Judge.

The decision of the district court is <u>affirmed</u>.  Costs are awarded to respondent.

Givens Pursley, LLP Boise, for appellants. Debora Kristensen argued.  Michael Kane, *amicus curiae.*

Gooding County Prosecuting Attorney, Gooding, for respondent.  Luverne Shull argued.

---

W. JONES, Justice

### FACTS AND PROCEDURAL HISTORY

This Court was asked to determine the validity and constitutionality of a few provisions within a newly enacted ordinance that regulates Confined Animal Feeding Operations ("CAFOs").  Respondent, Gooding County, adopted Ordinance No. 90 ("the Ordinance") on or about June 12, 2007, and on October 9, 2007, Appellants, the Idaho Dairymen's Association, Inc. and the Idaho Cattle Association, Inc., collectively referred to in this Opinion as the Associations, filed a complaint for declaratory and injunctive relief, challenging the constitutionality and validity of provisions within the Ordinance.  On November 30, 2007, the parties filed a written consent to file an amended complaint, and the Associations filed an amended complaint on that same day.  Gooding County filed an answer on December 17, 2007.

On July 18, 2008, the Associations filed a motion for summary judgment and a memorandum of law in support of their motion for summary judgment.  Gooding County filed a

brief in opposition to the Associations' motion for summary judgment on August 15, 2008, and on August 27, 2008, the Associations filed a reply brief.

The district court held oral arguments on September 2, 2008. On October 28, 2008, the district court entered an order on the Associations' motion for summary judgment, wherein the court denied the Associations' motion for summary judgment and, *sua sponte*, granted summary judgment in favor of Gooding County. The district court entered a judgment on November 6, 2008, and the Associations filed a timely notice of appeal on December 10, 2008.

## STANDARD OF REVIEW

When reviewing an order for summary judgment, the standard of review is the same standard used by the district court in initially ruling on the motion. *Mendenhall v. Aldous*, 146 Idaho 434, 436, 196 P.3d 352, 354 (2008) (citing *Watson v. Weick*, 141 Idaho 500, 504, 112 P.3d 788, 792 (2005)). Under Idaho R. Civ. P. 56(c), summary judgment should be granted when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." If there is no genuine issue of material fact, and only a question of law remains, this Court exercises free review. *Id.* In this case, the issues are questions of law.

## ISSUES ON APPEAL

I.      Whether regulation of water quality at CAFOs has been impliedly preempted.

II.     Whether Section VII(D)(1) of the Ordinance violates the Dormant Commerce Clause.

III.    Whether provisions in the Ordinance violate CAFO owners' and operators' substantive due process rights.

IV.     Whether this Court should award attorney fees and costs incurred in the action.

## ANALYSIS

The Associations argue four issues on appeal to this Court. The Associations claim county regulation of water quality at CAFOs has been impliedly preempted by the State of Idaho, and consequently, certain provisions within the Ordinance that were designed to regulate water quality are void. The Associations also argue that provisions within the Ordinance violate the Dormant Commerce Clause, and that provisions in the Ordinance violate CAFO owners' and operators' substantive due process rights. In addition, the Associations and Gooding County ask for attorney fees and costs incurred in the action.

**I.      This Court affirms the district court's holding that regulation of water quality at CAFOs has not been impliedly preempted.**

The Associations argue that the County may not regulate water quality at CAFOs because the state has implicitly preempted the field. Dairy and beef cattle operations are currently regulated by federal, state, and local laws. Under federal and state law, a CAFO operation must comply with Nutrient Management Plans ("NMPs"), and most CAFOs must comply with the National Pollutant Discharge Elimination System ("NPDES").

The Clean Water Act ("CWA") calls for effluent limitations to be set by the Environmental Protection Agency ("EPA"), which typically requires a NPDES permit in order to operate a CAFO. The CWA also requires that states, including Idaho, certify that projects falling within the ambit of NPDES comply with state water quality standards. 33 U.S.C. § 1341. "The NPDES program requires permits for the discharge of 'pollutants' from any 'point source' into 'waters of the United States.'" 40 C.F.R. 122.1(b)(1). By definition, "point source" includes CAFOs.[1] 33 U.S.C. § 1362(14). "[P]ollutant" means agricultural waste discharged into water. 33 U.S.C. § 1362(6). Thus, CAFOs that discharge agricultural waste into "waters of the United States" must obtain a NPDES permit. In order to obtain an NPDES permit, the CAFO must comply with Idaho Wastewater Treatment Standards and Water Quality Standards. IDAPA 58.01.02. The Department of Environmental Quality ("DEQ") has been delegated the duty to issue NPDES permits. I.C. § 22-4903(4).

The Sanitary Inspection of Dairy Products Act ("Dairy Act"), enacted in 1943, established the Idaho State Department of Agriculture ("ISDA") as the agency with authority to inspect dairy products. The EPA agreed to allow the state to delegate supervision of dairy farms from DEQ to the ISDA, even though the EPA, and not the state, has NPDES authority for siting permits in Idaho. In addition, the Dairy Act requires all dairy farms to have an NMP approved by ISDA. I.C. § 37-401(4).

The Beef Cattle Environment Control Act ("Beef Cattle Act"), I.C. § 22-4901, was enacted in 2000, and it requires an NMP to be approved by the ISDA in order to operate a beef cattle ranch within the State of Idaho. I.C. § 22-4906. In addition, the EPA has delegated its NPDES permit issuing authority to the ISDA.

---

[1] "CAFO" is defined as an animal feeding operation that stables or confines 200 or more dairy cows, whether milked or dry and, if the operation has less than 700 dairy cows, it either discharges pollutants into waters of the United States through a man-made device or discharges pollutants directly into waters of the United States. See 40 C.F.R. § 122.23.

3

The Ordinance at issue was enacted in June of 2007, and it compels CAFOs to comply with NPDES and NMP permit requirements. The Ordinance requires CAFOs to "follow and be in compliance with a current [NMP] which has been approved by [ISDA]," and "be in compliance with the [CWA] and any relevant federal or state regulation implementing the [CWA] in Idaho." However, the Ordinance places additional barriers on the operation of a CAFO, as it prohibits a new CAFO from being "located within one (1) mile of the rim of either the Snake River Canyon or the Malad River Canyon," and from being "located within two thousand six hundred forty feet (2,640) of a Zone 'A' flood plain."

The Associations claim these provisions, along with others, have been preempted because local regulation of water quality at CAFOs has been impliedly preempted. The Associations claim implied preemption has occurred for three reasons: the Legislature intended to occupy the field of regulating water quality at CAFOs; the State comprehensively regulated water quality at CAFOs; and regulation of water quality at CAFOs calls for a uniform regulatory scheme.

The district court provided one analysis as to whether preemption of water quality regulation at CAFOs has occurred. The district court held that the Idaho Legislature did not intend to fully preempt local regulation of water quality at CAFOs. In doing so, the district court took into account several statutory provisions that delegate authority to counties to regulate and site CAFOs.

### A. The Idaho Legislature did not intend to occupy the field of regulating water quality at CAFOs.

The Associations argue that local regulation of water quality at CAFOs is preempted because the Legislature intended to occupy the field. The Associations rely upon *Envirosafe Serv. of Idaho v. County of Owyhee*, 112 Idaho 687, 735 P.2d 998 (1987), and *Craig v. County of Chatham*, 356 N.C. 40, 565 S.E.2d 172 (2002), to demonstrate that this Court should find that the Legislature, when enacting the Beef Cattle and Dairy Acts, intended to fully occupy the field of regulating water quality at CAFOs. In addition, the Associations rely upon the Beef Cattle Act, I.C. § 22-4902, wherein the Legislature declared that the "department [of agriculture] shall have authority to administer all laws to protect the quality of water within the confines of a beef cattle animal feeding operation." The Associations also rely upon the Dairy and Beef Cattle Acts, which requires farmers to submit an NMP to the director of ISDA to ensure that CAFO operators have complied with the state's system of animal waste management.

4

Gooding County combats the Associations' arguments by claiming that not only is there no implied preemption, as evident from statutory provisions, but the Idaho Legislature expressed its intent not to preempt the field.

This Court exercises free review over questions of law. *Mendenhall*, 146 Idaho at 436, 196 P.3d at 354.

This Court holds that the Legislature did not intend to preempt local regulation of water quality at CAFOs. The Constitution of the State of Idaho states, "Any county . . . may make and enforce, within its limits, all such local police, sanitary and other regulations as are *not in conflict* with its charter or with the general laws." Idaho Const. art. XII, § 2. (emphasis added). A "conflict" between state and local regulation can be found if implied preemption has occurred. *Envirosafe*, 112 Idaho at 689, 735 P.2d at 1000. In *Envisosafe*, this Court laid out guidance as to when implied preemption has occurred:

> Where it can be inferred from a state statute that the state has intended to fully occupy or preempt a particular area, to the exclusion of [local government entities], a [local] ordinance in that area will be held to be in conflict with the state law, even if the state law does not so specifically state.

*Id.* (quoting *Caesar v. State*, 101 Idaho 158, 161, 610 P.2d 517, 520 (1980)).

A few statutory provisions support the Associations' argument that the Legislature intended to preempt the field of water quality at CAFOs. Most notably, I.C. § 22-4902(2) states, "The department shall have authority to administer all laws to protect the quality of water within the confines of a beef cattle animal feeding operation." In addition, the Dairy and Beef Cattle Acts require CAFO operators to submit an NMP to the director of ISDA. I.C. §§ 37-401, 22-4906. The CWA also requires that states, including Idaho, certify that projects requiring an NPDES, which includes CAFOs that discharge agricultural waste, comply with state water quality standards. 33 U.S.C. § 1341. In order to obtain an NPDES permit, the CAFO must comply with Idaho Wastewater Treatment Standards and Water Quality Standards, and the ISDA, a state agency, has been delegated the duty of issuing NPDES permits. I.C. § 22-4903(4); IDAPA 58.01.02. These provisions, however, are insufficient to find legislative intent to preempt local regulation of water quality at CAFOs.

In addition, the Legislature manifested an express intent not to preempt the field of regulating water quality at CAFOs. The *Envirosafe* decision states:

5

In *Clyde Hess Distributing Co. v. Bonneville County*, 69 Idaho 505, 210 P.2d 798 (1949), this Court acknowledged the ability of the legislature to implicitly preempt local regulation by occupying the field of regulation. In that case, we found that the legislature "did not intend to occupy the whole field of hours of sale of beer, thereby making any regulation by the county necessarily inconsistent with the general law." *Clyde Hess*, 69 Idaho at 510, 210 P.2d at 800. Our failure to find the field preempted in *Clyde Hess* was due to the fact that express intent not to preempt was found in the same statute which had been alleged to preempt the field.

112 Idaho at 690, 735 P.2d at 1001. A number of state statutes demonstrate that the state did not intend to preempt the field. For example, I.C. § 67-6529(2) states:

Notwithstanding any provision of law to the contrary, a board of county commissioners shall enact ordinances and resolutions to regulate the siting of large confined animal feeding operations and facilities, as they shall be defined by the board, provided however, that the definition of a confined animal feeding operation shall not be less restrictive than the definition contained in section 67-6529C, Idaho Code, including the approval or rejection of sites for the operations and facilities.

In addition, the Agriculture Odor Management Act reads, "Counties may require an applicant for siting of a CAFO to submit an odor management plan as part of their application." I.C. § 67-6529D(1). The Odor Management Act also states, "This act does not preempt local regulation of a CAFO." I.C. § 67-6529D(3). These statutes demonstrate that the Legislature, at times, intended to delegate regulatory power to counties. Thus, this Court holds that the State did not intend to implicitly preempt the field of regulating water quality at CAFOs.

**B.** **This Court holds that the State has not comprehensively regulated water quality at CAFOs.**

The Associations claim that a local ordinance conflicts with State law not only when the Legislature intended to preempt the field, but also when the State lawfully occupies a field in which local legislation attempts to enter. In *Envirosafe*, this Court stated, "The doctrine of implied preemption typically applies in instances where, despite the lack of specific language preempting regulation by local government entities, the state has acted in the area in such a pervasive manner that it must be assumed that it intended to occupy the entire field of regulation." 112 Idaho at 689, 735 P.2d at 1000. The Associations argue that like in *Envirosafe*, the State has acted in an all-encompassing manner. In support of its argument, the Associations cite the fact that the State must certify to the EPA that its NPDES-permitted projects comply with state water quality standards. "Because the ISDA has complete and sole authority to

approve an operator's NMP and review ongoing compliance with the NMP," the Associations argue, "state legislation regulating water quality compliance is comprehensive." In addition, in reliance upon *Olson v. Ada County*, 105 Idaho 18, 665 P.2d 717 (1983), the Associations argue that even though the state grants authority regarding the siting of CAFOs to the counties, that power merely provides counties with traditional planning and zoning authority, and it does not defeat the state's implied preemption of water quality regulation at CAFOs.

Gooding County argues that they have police powers to enact regulations that are not in conflict with State law. In addition, Gooding County argues that in *Ralph Naylor Farms, LLC v. Latah County*, 144 Idaho 806, 810, 172 P.3d 1081, 1085 (2007), this Court stated:

> While I.C. § 42-101 provides that control over the appropriation of water is vested in the State, there are also Idaho Code provisions which mandate that a local governing board consider the effect any proposed amendments to the comprehensive plan 'would have on the source, quality and quantity of ground water in the area.' I.C. § 67-6537.

Likewise, Gooding County claims that none of the Ordinance's water quality provisions unlawfully conflict with state or federal statutes. Gooding County also relies upon I.C. §§ 67-6529(2) and -6529D of the Agriculture Odor Management Act, and I.C. § 37-401(6)(4)(a) of the Sanitary Inspection of Dairy Products Act to demonstrate that the State has not comprehensively regulated water quality at CAFOs.

Under Article 12, § 2 of the constitution, a county ordinance may not conflict with a state statute. A "conflict" between state and local regulation can be found if implied preemption has occurred. *Envirosafe*, 112 Idaho at 689, 735 P.2d at 1000. This Court provided guidance in *Envirosafe*: "The doctrine of implied preemption typically applies in instances where, despite the lack of specific language preempting regulation by local governmental entities, the state has acted in an area in such a pervasive manner that it must be assumed that it intended to occupy the entire field of regulation." *Id.*

This Court finds that the State has not comprehensively regulated water quality at CAFOs. Again, there is some merit to the Associations' argument that the state has comprehensively regulated water quality at CAFOs. Under both the Beef Cattle and Dairy Acts, each CAFO operator must have an NMP prepared by a Certified Nutrient Management Planner and be approved by the ISDA, a state agency. I.C. §§ 22-4306, 37-408. In addition, the CWA requires that states, including Idaho, certify that projects requiring a NPDES permit comply with

7

state water quality standards. 33 U.S.C. § 1341. In order to obtain a NPDES permit, the CAFO must comply with Idaho Wastewater Treatment Standards and Water Quality Standards, and the ISDA, a state agency, has been delegated the duty of issuing the permits. I.C. § 22-4903(4); IDAPA 58.01.02. These water regulations coordinated by the state demonstrate that the state has to some degree regulated water quality at CAFOs; however, they are insufficient to establish that the state has comprehensively regulated water quality.

In addition, statutes relied upon by Gooding County demonstrate that the Legislature has granted counties the authority to regulate the siting and conditions of placement for CAFOs. The Legislature has enacted I.C. § 67-6529(2), which allows a board of county commissioners to "enact ordinances and resolutions to regulate the siting of large confined animal feeding operations and facilities." Furthermore, the Agriculture Odor Management Act reads, "Counties may require an applicant for siting of a CAFO to submit an odor management plan as part of their application," and states, "This act does not preempt local regulation on a CAFO." I.C. §§ 67-6529D(1), (3). In addition, the Sanitary Inspection of Dairy Products Act reads:

> The director or his agent may issue a permit to sell milk for human consumption to a new or expanding dairy farm only upon presentation to the director by the new or expanding dairy farm: A certified letter, supplied by the board of county commissioners, certifying the new or expanding dairy farm's compliance with applicable county livestock ordinances.

I.C. § 37-401(6)(4)(a). These provisions, as relied upon by Gooding County, demonstrate that the State has not comprehensively regulated CAFOs.

The Associations also allege that the Ordinance has gone beyond traditional functions of planning and zoning, and consequently, the County has violated I.C. § 67-6529(1). The Associations raise this issue for the first time on appeal. This Court will not address issues not raised in the lower court. *Mackowiak v. Harris*, 146 Idaho 864, 866, 204 P.3d 504, 506 (2009).

**C.      This Court finds that regulation of water regulation at CAFOs does not call for a uniform regulatory scheme.**

The Associations rely upon *Envirosafe* to support their claim that the nature of the subject matter regulated calls for a uniform state regulatory scheme, and consequently, local regulation of water quality at CAFOs has been impliedly preempted by state law. 112 Idaho at 689, 735 P.2d at 1000. Gooding County did not address this claim.

8

Under Article 12, § 2 of the constitution, a county ordinance may not conflict with a state statute. A "conflict" between state and local regulation can be found if implied preemption has occurred. *Envirosafe*, 112 Idaho at 689, 735 P.2d at 1000. "If the court finds that the nature of the subject matter regulated calls for a uniform state regulatory scheme . . . ordinances are preempted." *Id.* (citing *Twp. of Cascade v. Cascade, Res. Recovery Inc.*, 118 Mich. App. 580, 584, 325 N.W.2d 500, 502 (Mich. App. 1982)).

This Court finds that the regulation of water quality at CAFOs does not call for a uniform regulatory scheme. Idaho consists of forty-four counties, each with different terrain, population densities, industries, and geologic features. Parts of Idaho's landscape are rugged unspoiled natural areas, while others, such as Boise, include large metropolitan communities. Idaho has great variations in its climate, with portions of the State affected by weather patterns off the Pacific Ocean, and other portions affected by the dryness of the high desert topography. In addition, Idaho's highest point is 12,662 feet and lowest valley is only 710 feet, which further illustrates that the State has a number of different climates. The State's diverse setting places each board of commissioners in the best position to know the needs of their community, and as a result, uniform regulation of water quality is not necessary.

The Ordinance has granted Gooding County authority to act in a manner that complements state and federal regulation. County ordinances cannot conflict with state statutes and are void to the extent that they do. Idaho Const. art. XII, § 2. County ordinances can, however, complement or supplement state statutes regulating water quality to the extent they are not in conflict. While state and federal regulations, including the issuance of NPDES permits and approval of NPSs, are administered by the ISDA, Gooding County has the authority to complement these regulations by overseeing the siting of CAFOs.

**II.   This Court affirms the district court's holding that Section VII(D)(1) of the Ordinance does not violate the Dormant Commerce Clause.**

The Associations argue that Section VII(D)(1) of the Ordinance violates the Dormant Commerce Clause because it prohibits CAFO operators from lawfully disposing of animal waste outside Gooding County and the state. However, the parties have stipulated that the Dormant Commerce Clause issue is settled. *See Reding v. Reding*, 141 Idaho 369, 373, 109 P.3d 1111, 1115 (2005) ("Stipulations are a form of judicial admission that obviates the necessity for proof of facts that are admitted in the stipulation."). At the hearing on the summary judgment motion,

9

Gooding County's attorney asserted that Section VII(D)(1) does not forbid the disposal of animal waste outside Gooding County and the State. Subsequently, the Associations' counsel conceded the issue, stating, "Okay, Your Honor . . . . The interstate commerce clause argument then goes away." This amounted to a stipulation and eliminated the need for this Court to entertain the issue on appeal. *See Reding*, 141 Idaho at 373, 109 P.3d at 1115.

III.     **This Court affirms the district court's holding that provisions within the Ordinance do not violate the substantive due process rights of CAFO operators.**

The United States and Idaho Constitutions protect against state deprivation of a person's "life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1; Idaho CONST. art. 1, § 13. In order to prevail on a substantive due process claim, the state action that deprives a person of life, liberty, or property must be arbitrary, capricious, or without a rational basis. *Pace v. Hymas*, 111 Idaho 581, 586, 726 P.2d 693, 698 (1986). Conversely, a substantive due process violation will not be found if the state action "bears a reasonable relationship to a permissible legislative objective." *McNeely v. State*, 119 Idaho 182, 189, 804 P.2d 911, 918 (Ct. App. 1990) (citing *State v. Reed*, 107 Idaho 162, 167, 686 P.2d 842, 847 (Ct. App. 1984)).

The Associations claim Section VII(D)(1) of the Ordinance violates their substantive due process rights because Section VII(D)(1) does not bear a reasonable relationship to Gooding County's objective in enacting the Ordinance. Section VII(D)(1) states:

> The approved maximum density of animals shall not exceed five (5) animal units per tillable, irrigated acre owned by the CAFO applicant. The land base to support the animal units is required to be in Gooding County with the exception of contiguous land in an adjacent county. Aquaculture shall remain at ten (10) animal units per acre.

The Associations claim that there is no basis for requiring CAFO operators to own the land used to dispose of their animal waste. Specifically, the Associations are troubled by the portion of the provision that states: "The approved maximum density of animal units shall not exceed five (5) animal units per tillable, irrigated acre *owned by the CAFO applicant . . . .* " (emphasis added). The Associations argue that this provision is arbitrary because it presumes that that all CAFO operators use land application to dispose of animal waste. The Associations argue NMPs allow for other forms of waste management, including digesting, composting, and exporting.

Gooding County relies upon the district court's analysis, in which the court stated, "This section clearly does not state that animal waste may only be applied to land owned by CAFO owners and operators. Instead, the clear meaning of this section is that only land owned by the

CAFO applicant may be used in calculating the animal unit density for the CAFO . . . ." The court reasoned that the rule eliminates the possibility that CAFO operators may combine owned land with leased land when calculating animal unit density, yet, have limited legal right to the leased land. The court also took into account the fact that "enforcing CAFO permit requirements/violations against one holding only a leasehold interest can become far more problematic to the county."

This Court affirms the district court's holding that Section VII(D)(1) limits land which may be used when calculating animal unit density, and that it does not require CAFO operators to own the land used to dispose of their animal waste. Section VII(D)(1) is clear and unambiguous. *See Hamilton*, 135 Idaho at 572, 21 P.3d at 894 (stating that if "the statutory language is clear and unambiguous, statutory construction is unnecessary and this Court need merely apply the statute"). The segment, "The approved maximum density of animals shall not exceed five (5) animal units per tillable, irrigated acre owned by the CAFO applicant," can be broken down into two parts: the maximum density of animals per acre and specifications as to what land may be included in the density calculation. The portion at issue, "owned by the CAFO applicant," is simply a limitation on what land may be included in the density calculation.

The Associations argue the cap placed upon the number of animal units per acre is arbitrary and was established without a rational basis. The Associations argue that the limitation is arbitrary because "[t]here is nothing in the Ordinance that suggests five (5) animal units per acre is a significant threshold, much less an appropriate limit for all CAFOs in all situations." The Associations argue:

> Setting a one-size-fits-all animal density maximum is inherently arbitrary because it fails to recognize the potential efficacy of CAFO operators utilizing waste management programs other than direct land application of the animal waste, that all aspects of CAFO waste management are addressed in the NMP that is thoroughly reviewed and approved by the state of Idaho.

Gooding County again relies upon the district court's reasoning. Finding the density cap to be reasonable, the district court took into account the fact that "soil sampling of agricultural fields in Gooding County in 2006 indicated that 88 per cent of the fields sampled exceeded the maximum allowable phosphorus levels as set by the Idaho Department of Agriculture," that "animal unit densities of up to ten (10) per acre has resulted in the over application of animal waste on existing agricultural land," and the fact that Gooding County had "received an

11

increased number of complaints as compared to prior years concerning contaminated wells, obnoxious odors, pests, dust and airborne contaminants from residents," as stated in the preamble of the Ordinance.

This Court affirms the district court's holding that the limitation on the number of animal units per acre does not violate CAFO operators' substantive due process rights. *See McNeely*, 119 Idaho at 189, 804 P.2d at 918. Specific facts illustrate the relationship between the cap on animal units per acre and Gooding County's objective of encouraging the retention of productive agricultural lands and the protection of the aquifer by encouraging good waste management plans. As stated above, a study indicated that 88 per cent of fields examined contained excessive amounts of phosphorus, which is caused by large amounts of animal waste, and the fact that ten (10) animal units per acre has, to date, resulted in over application of animal waste to agricultural land. Consequently, Gooding County has provided facts illustrating a "reasonable relationship" between its objective and the need for a limit on the number of animal units cap per acre. *See McNeely*, 119 Idaho at 189, 804 P.2d at 918.

The Associations argue that the "one-size-fits-all animal density maximum is inherently arbitrary." However, the Ordinance allows for the grant of a variance if certain conditions are met, one condition being whether "the CAFO operator employs multiple, proven, environmental technologies or methods to enhance or improve air, soil, and water quality." These factors bear a "reasonable relationship" to the Ordinance's objective of encouraging retention of agricultural lands and the protection of the aquifer through solid waste management plans. *See McNeely*, 119 Idaho at 189, 804 P.2d at 918. The Associations argue that even though a variance may be granted, there is no justification to set any maximum number of animal units per acre. The Associations claim any standardized limit is arbitrary, as evidenced by the fact that NMPs do not set a maximum number. However, there needs only to be a reasonable relationship between the Ordinance and a permissible legislative objective in order for this Court to find that a substantive due process violation has not occurred. *McNeely*, 119 Idaho at 189, 804 P.2d at 918. In this case, as discussed above, there is sufficient support to find that the limit to a maximum of five (5) animal units per acre, or seven (7) animal units with a variance, bears a "reasonable relationship" to a permissible objective. *See Id.*

The Associations claim that the requirement that land be "tillable" and "irrigated" in order to be included in the animal unit density calculation is arbitrary. As stated above, the

provision reads, "The approved maximum density of animal units shall not exceed five (5) animal units per *tillable*, *irrigated* acre owned by the CAFO applicant." (emphasis added). This requirement fails to recognize the potential efficacy of CAFO operators utilizing waste management programs other than direct land application of the animal waste, the Associations argue.

Gooding County relies upon the district court's reasoning where the district court held that the requirement that land must be "tillable" and "irrigated" in order to be included in the calculation is reasonable. In its analysis, the district court stated:

> This requirement, in part, protects from over-application of animal waste on land, which is a direct concern of the County, as set forth in the Preamble to [the Ordinance]. More importantly, it requires the use of land which can grow crops which will 'uptake' or use some of the animal waste nutrients. Additionally, specific geological features, such as water courses, fissures in rock, solid rock and/or steep grades, are not conducive to keeping the water contained or on the CAFO site and/or not as likely to properly absorb the waste. This 'tillable, irrigable' requirement also ensures that acreage consumed by homesteads, ditches, roads, corrals, milking barns, feed storage, etc., are not considered in the calculation for the animal density.

The requirement bears a "reasonable relationship" to an Ordinance objective. *See McNeely*, 119 Idaho at 189, 804 P.2d at 918. One of the objectives of the Ordinance is the "implementation of 'improved irrigation management and soil fertility management to reduce movement of biological, chemical and physical contaminants through the soil profile to surface and sub surface waters.'" And, "matching of 'animal waste . . . with crop usage of nutrients," is one of the Ordinance's strategies to reduce this problem. Consequently, the requirement that land must be "tillable" and "irrigable" in order to be included in the density calculation bears a "reasonable relationship" to the Ordinance's objective of matching animal waste to crops that will use animal waste nutrients. *See McNeely*, 119 Idaho at 189, 804 P.2d at 918.

Lastly, the Associations claim that Section VII(D) will lead to an arbitrary result because the Section will increase, not decrease, the risk of water contamination. In support of their argument, the Associations cite Section I(B) of the Ordinance, "The Board . . . finds that there is a danger of pollution to the aquifers, watersheds, surface water, ground water, springs and water courses located in Gooding County," and a section lifted from the Ordinance's preamble, "[O]ver application of animal waste has increased potential to contaminate both agricultural soil and water resources." Section VII(D)(1) of the Ordinance, which states that "[t]he land base to

13

support the animal units is required to be in Gooding County," the Associations argue, undermines the Ordinance's objectives by prohibiting CAFO operators from sending their animal waste outside the County.

Gooding County claims that the district court properly interpreted the provision when stating, "The term, 'land base,' . . . is not based upon the disposal of animal waste. Again, Section VII(D)(1) simply deals with calculating the density of animals per acre . . . ."

As articulated in Section II of this opinion, the district court's interpretation of Section VII(D)(1) is correct. The Section requires the land, when calculating density of animal units per acre, be located in the County; the Section does not prohibit CAFO operators from removing animal waste from the County. Thus, this substantive due process claim is unavailing.

## VI. This Court does not award attorney fees and costs.

The Associations claim they are entitled to attorney fees and costs pursuant to I.C. §§ 10-1210 and 12-121, and 42 U.S.C. § 1988. The Associations, however, are not entitled to attorney fees because they did not prevail on appeal.

## VII. This Court does not award Gooding County attorney fees on appeal.

Gooding County argues that it should be awarded attorney fees under I.C. § 12-117 because the Associations acted without a reasonable basis in fact or law when appealing the district court's decision. In support of its claim, Gooding County cites I.C. § 67-6529(2), which grants the County authority to "enact ordinances and resolutions to regulate the siting of [CAFOs]." The Associations did not respond to Gooding County's claim.

This Court does not award attorney fees to Gooding County under I.C. § 12-117. Pursuant to I.C. § 12-117, a "court shall award the prevailing party reasonable attorney's fees . . . if the court finds that the party against whom the judgment is rendered acted without a reasonable basis in fact or law." Whether the Legislature intended to occupy the field of regulating water quality at CAFOs is an issue with federal, state, or local ordinances reasonably supporting both the Associations' and Gooding County's assertions. Accordingly, attorney fees should not be awarded to Gooding County because the Associations' had a "reasonable basis in fact and law" when bringing this appeal. *See* I.C. § 12-117.

Gooding County also claims it should be awarded attorney fees under I.C. § 12-121. I.C. § 12-121 reads: "[T]he judge may award reasonable attorney's fees to the prevailing party or parties." Gooding County, again, argues that attorney fees should be awarded because the

14

Associations proceeded without a reasonable basis in fact or law.  However, as discussed above, the Associations acted with a reasonable basis in fact and law.

## CONCLUSION

For the foregoing reasons, this Court affirms the district court's holding that state regulation of water quality at CAFOs has not preempted local regulation.  In addition, this Court affirms the district court's holding that the Ordinance does not violate CAFO owners' and operators' substantive due process rights.  This Court also affirms the district court's holding that an award of attorney fees was not warranted, and this Court does not award attorney fees on appeal.  Costs are awarded to Gooding County.

Justices BURDICK, HORTON and Justice *pro tem* HURLBUTT, **CONCUR.**

Justice *pro tem* TROUT dissents as to Part III, only.